**D. A. SHORES and Kathleen Shores, husband and wife, Appellants (Defendants below),**

v.

**D. L. LINDSEY and Rose M. Lindsey, husband and wife, Appellees (Plaintiffs below).**

**No. 5000.**

Supreme Court of Wyoming.

May 3, 1979.

Christian S. Hinckley, of Hinckley & Hinckley, Basin, for appellants.

Otis W. Beach, of Wolfe, Griffith & Beach, P.C., Fort Collins, Colo., for appellees.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROONEY, Justice.

Appellees-plaintiffs instituted an action against appellants-defendants for recovery of a strip of land for which they held record title but which was enclosed by a fence with adjacent land of defendants. Defendants assert ownership through adverse possession. Following a trial to the court, judgment was entered for plaintiffs. We will reverse.

The primary assignment of error is that the court's failure to make a finding of fact as to the location and significance of the

existing fence line resulted in certain errors in the findings of fact and conclusions of law with regard to the degree of occupancy and use required to satisfy the elements of actual and continuous possession necessary to establish adverse possession.

The facts are generally undisputed. Plaintiffs are record owners of Lot 9, Section 28, Township 24 North, Range 63 West, 6th P.M., in Big Horn County, having acquired it in 1961. Defendants are record owners of adjacent Lot 3, having acquired it December 11, 1962. They took possession of it January 15, 1963. Lot 3 is immediately north of Lot 9. An old-type heavy buffalo-double-barbed wire fence parallels the boundary line between the two lots and was approximately 200 feet from that line on plaintiffs' lot. It, therefore, enclosed about 6.6 acres of plaintiffs' Lot 9 with defendants' Lot 3. A highway underpass joined Lot 3 with other lands of defendants.

The parties are agreed that the fence line had been in its present location for at least 40 years preceding the date this litigation was commenced, and that it was existing at the time they acquired their respective lots. Defendants believed that the fence line represented the true boundary between the lots. Plaintiffs, however, were advised shortly after their acquisition that the fence line was off "between ten and twelve feet" but made no mention of the matter to defendants until 1972. The true location of the fence line was determined by a licensed survey in 1976.

The elements of adverse possession consist of actual, open, notorious, exclusive, and continuous possession of another's real property for the statutory period, which possession is hostile and under a claim of right or color of title. *City of Rock Springs v. Sturm*, 39 Wyo. 494, 273 P. 908, 910, 97 A.L.R. 1 (1929); and *Bryant v. Cadle*, 18 Wyo. 64, 104 P. 23 (1909), modified on rehearing, 18 Wyo. 95, 106 P. 687 (1910). The elements must exist for at least ten years prior to the commencement of an action affecting title to or possession of the property. Section 1–3–103, W.S.1977. The findings of fact and conclusions of law indicate that the district court denied defendants' adverse possession claim because of the lack of exclusivity and continuity of use. As the case is postured, there is no dispute that the other elemental requirements were satisfied.

Other than with reference to the fence, defendants' position is predicated upon three activities that were conducted in connection with the disputed strip from 1963 to the filing of this suit on October 8, 1976: (1) a farming operation in 1963 and 1964; (2) the pasturage of cattle in every year from 1964 to 1976; and (3) the erection of and construction of a roping arena and corrals on a portion of the strip in 1972. The findings and conclusions of the court indicate that it considered the farming operation and the erection of the corrals and roping pens to satisfy the requirements of adverse possession but decided that the evidence relating to the pasturage of cattle in the interim did not establish exclusive and continuous occupancy of the premises. In this regard, the findings of fact stated:

"11. The strongest of all of the Defendants' claims rests with the grazing of cattle on the land in question, said cattle having access to that land from an underpass through the highway on Defendants' land to Plaintiffs' land. As counsel know, the Court did examine the premises in question so is familiar with the type of pasture that was available to the cattle during the period of time in question.

"12. That the pasturage by the cattle belonging to the Defendants on the subject property was disconnected in the period of occupancy in that from the Court's view of the premises, the only time in which the cattle could graze on the land in question would be during the growing season, which, of course, is short in duration in Wyoming.

"13. That the claimed pasturage by the Defendants was also casual and incidental and of a sporadic nature by reason of the very nature of the times when the cattle could graze. Throughout the entire period of time, there were times when they were on the Plaintiffs' property and there were times when they were not and were on their own property, thus such grazing would become if not sporadic very widely scattered. For this reason the Court is of the opinion that the acts of the Defendants' cattle do not come within the provisions contemplated by the Strum [sic] case as neither exclusiveness nor continuous possession have been established herein and, thus, the claim of adverse possession fails in this area."

The legal conclusions drawn from these findings restate the legal principles applied in findings nos. 12 and 13.

■ Defendants argue that even though the findings correctly determined that their cattle had grazed on the disputed tract, finding no. 12 was erroneous because it confused the duration of use with the possessory use necessary to establish an adverse claim. It is further argued in an apparent reference to finding no. 13 that no mention was made of undisputed evidence showing that: (1) the cattle had relatively free access to defendants' lots on both sides of the highway; and (2) the acreage was enclosed with Lot 3 by the existing fence line, which defendants believed to have represented the true southern boundary of Lot 3. Addressing the latter omission, it is con-

tended that the failure to find on this material issue resulted in an erroneous conclusion as to the use and occupancy necessary to establish exclusive and continuous possession.[1]

■ When the specific findings of fact are made by the trial court on evidentiary matters, they are presumed to be correct, and an appellate court will not disturb them unless they are clearly erroneous or against the great weight of the evidence. *Whitefoot v. Hanover Ins. Co.*, Wyo., 561 P.2d 717, 720 (1977); and *Willis v. Asbury Transportation Co.*, Wyo., 386 P.2d 934, 937 (1963). The review standard recognizes that deference must be given to the opportunity of the trial court to judge the credibility of the witnesses, and that a reviewing court will not set aside the court's findings merely because it might have reached a different result. *United States v. National Ass'n of Real Estate Bds.*, 339 U.S. 485, 495–496, 70 S.Ct. 711, 94 L.Ed. 1007 (1950); and *United States v. Yellow Cab Co.*, 338 U.S. 338, 341–342, 70 S.Ct. 177, 94 L.Ed. 150 (1949). However, the presumption of correctness will be overcome if the reviewing court on the entire evidence is left with a definite and firm conviction that a finding is mistaken. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); and *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

■ Findings of fact of the trial judge can also lose the insulation of the clearly erroneous standard if they are induced by

1. We note from a reading of plaintiffs' brief that it implies our review of this matter is affected by the failure of defendants to submit any proposed findings and the fact that their counsel was mailed a copy of the proposed findings of fact and conclusions of law that were ultimately submitted to the court by plaintiffs' counsel. No authority is cited for this proposition and for good reason. Rule 52(b), W.R.C.P., expressly grants a reviewing court authority to review findings of fact without the necessity of making an objection in district court to the findings or of making a

motion to amend them or a motion for judgment. *Boode v. Wolfe*, Wyo., 430 P.2d 119, 120 (1967) (per curiam); see also 9 Wright and Miller, Federal Practice and Procedure: Civil, § 2581; 5A Moore's Federal Practice, ¶ 52.-11[4]. The submission of proposed findings is a valuable aid to the court's decision-making, but the failure to give the court the benefit thereof does not prevent the party from later attacking a finding that is clearly erroneous. *Evans v. Suntreat Growers & Shippers, Inc.*, Emer.Ct.App., 531 F.2d 568, 570 (1976) (per curiam).

an erroneous view of the law, *United States v. United States Gypsum Co.*, supra, 333 U.S. at 394; and *United States v. Richberg*, 5th Cir., 398 F.2d 523 (1968), or contain factual and legal conclusions that reflect the application of an improper legal standard. In either event, such findings, like conclusions of law, are not binding on an appellate court. As stated by the court in *Cordovan Associates, Inc. v. Dayton Rubber Company*, 6th Cir., 290 F.2d 858, 860 (1961):

" * * * [N]ot all findings labeled as findings of fact are binding on an appellate court. Where a finding designated as a finding of fact is not in reality a finding of fact, but is a conclusion of law or a mixed finding of fact and conclusion of law, it is not binding on the appellate court. [Citations.] Where a finding is of an ultimate fact in the making of which is involved the application of legal principles, it is subject to review. [Citations.]"

Finding no. 11 does reflect a determination that pasturage of livestock was a reasonable use for which the disputed 6.6 acres was suitable. The court, however, made an erroneous legal conclusion in finding no. 12 that pasturage during the growing season apparently was not of sufficient duration to establish continuous occupancy of the premises. In *Brumagim v. Bradshaw*, 39 Cal. 24, 46 (1870), the Supreme Court of California provided an apt explanation of the dominion and control necessary to establish actual occupation in adverse possession cases:

" * * * The general principle which underlies all this class of cases is, that the acts of dominion must be adapted to the particular land, its condition, locality and appropriate use. The philosophy of the rule is, that by such acts the party proclaims to the public that he asserts an exclusive ownership over the land, and the acts which he performs are in harmony with his claim of title. * * * "

■ A person who rests his claim of adverse possession on the grazing of livestock on the land in question is not required to continuously pasture the herd throughout the entire year. Continuous dominion and control is proven when land suitable for grazing and pasturage is occupied and used in such manner during the full period of the growing season. *Lantry v. Parker*, 37 Neb. 353, 55 N.W. 962, 963 (1893); *Springer v. Durette*, 217 Or. 196, 342 P.2d 132, 134 (1959); *Adams v. Lamicq*, 118 Utah 209, 221 P.2d 1037, 1039 (1950); *Niles v. Churchill*, 29 Colo.App. 283, 482 P.2d 994 (1971). The reasoning behind the application of the principle was most cogently explained by Mr. Justice Hayne, writing for the court in *Webber v. Clarke*, 74 Cal. 11, 15 P. 431, 435 (1887):

" * * * [W]e think that pasturing during the pasturing season is 'appropriate use according to the particular locality and quality of the property.' To pasture the land when it was not 'pasturable' would not only be not an appropriate use, but an impracticable one. In the case of cultivation, there is an interval of several months between the harvesting of one crop and the preparation of the soil for another. And there would be just as much sense in holding that the interval destroyed the continuity of the possession in the one case as in the other. To so hold would be, in effect, to hold for all practical purposes that adverse possession could not be acquired by pasturage; for obedience will be paid to nature's laws rather than to man's, and the thing supposed to be necessary would never be done. It is sufficient that the use is in accordance with the usual course of husbandry in the locality. * * * "

■ The evidence here undisputably established that the strip in question was undesirable as farming land because of a lack of water, but was suitable for grazing cattle. The only other evidence of condition and quality was that it contained poor pasture. Such evidence, however, was not determined as a finding of fact, and even if it was, that fact alone could not have been relied on to defeat defendants' rights of

ownership. *Niles v. Churchill*, supra, 482 P.2d at 995. Since there was no showing of a more appropriate use of this tract, the grazing of cattle thereon during the full growing season, however short or long, was appropriate use and occupation for the purpose of establishing adverse possession. Finding no. 12 reflects an erroneous application of law and is not a binding justification for denying defendants' claim.

In finding no. 13, the district court determined that the pasturage of cattle was casual, incidental, and sporadic because the cattle grazed on the disputed tract part of the time and on defendants' land at other times. The finding then contains the legal conclusion that the acts associated with grazing were widely scattered and did not satisfy the elemental requirements of exclusive and continuous possession. Continuity of possession does require more than occasional or sporadic acts of dominion, 5 Thompson on Real Property, § 2551, p. 649, but the finding here does not acknowledge the different legal standards that apply when adverse possession is predicated upon the grazing of lands. See generally Annot., *Grazing of Livestock or Gathering of Natural Crop as Fulfilling Traditional Elements of Adverse Possession*, 48 A.L. R.3d 818 (1973). Thus, the failure of the court to determine the location of the existing fence line with respect to the true boundary line as a finding of fact and to consider the legal effect of such fence resulted in a misapplication of the law as stated in the finding.

The undisputed evidence disclosed that defendants held possession of the disputed tract up to the dividing fence under a belief, albeit mistaken, that it was the true line between Lots 3 and 9. Plaintiffs shared the same belief with the exception that the fence was 10 to 12 feet off. When a claimant has occupied land under mistaken belief as to the true boundary, there must be evidence of an intent to possess to that boundary. *City of Rock Springs v. Sturm*, supra. In that opinion, this court said that while the words of the claimant should be taken into consideration, intent as to the character of possession may be better ascertained by the acts of possession. *Sturm* also suggests that the effect of a fence enclosing land is not, *ipso facto*, sufficient to establish a claim of adverse possession. Evidence of use and occupancy of a disputed strip up to the fence, however, is sufficient. *Mader v. Stephenson*, Wyo., 501 P.2d 1253 (1972).

It is a generally recognized principle of law that the pasturing of livestock within a substantial enclosure—including a fence—can be sufficient to establish the elements of adverse possession. *Park v. Powers*, 2 Cal.2d 590, 42 P.2d 75, 77 (1935); *Niles v. Churchill*, supra; *Omaha & Florence Land & Trust Co. v. Parker*, 33 Neb. 775, 51 N.W. 139, 140 (1892); *Norgard v. Busher*, 220 Or. 297, 349 P.2d 490, 494–495, 80 A.L.R.2d 1161 (1960); *Young v. Newbro*, 32 Wash.2d 141, 200 P.2d 975 (1948). The case law seems to suggest that the mere fact of access to the disputed tract does not create an inference that the livestock necessarily grazed thereon while within the fence enclosing the tract with the claimant's land. See e. g., *Miller v. Bushnell*, 275 Or. 45, 549 P.2d 655, 656 (1976). It is not essential to our disposal that we treat this question. Instead, the evidence is undisputed that in every year from 1964 to 1976 defendants' cattle literally grazed within the fenced confines of Lot 3, including the disputed 6.6 acres. The evidence does show that the cattle were moved from one side of the highway to the other, but the practice of rotating pastures conforms to the reality of raising livestock in the arid regions of the western states. Plaintiffs acknowledged they had never occupied or made any use of the north side of the fence. They also caused repairs to be made to the fence in order to keep the livestock from straying on both sides of the fence.

While the burden is on the adverse claimant to prove the right to have owner-

ship of disputed land transferred to himself, this court said in *City of Rock Springs v. Sturm*, supra, at 273 P. 915–916:

" * * * [I]t is a reasonable rule that, when a man has occupied a piece of ground, though under a mistaken belief as to the true boundary, for the period prescribed by law, openly, notoriously, exclusively, and in a manner plainly indicating that he acted as owner thereof, the presumption should be, in the absence of explanatory circumstances showing the contrary, that he occupied the land adversely and under a claim of right, casting the burden of explaining such possession upon the person who disputes his right. It may not always be plain whether the occupancy and use of the premises was as owner or not. A fence inclosing land may be sufficient under some circumstances, and not under others, and the greater the use and the more complete the occupancy, the more convincing the acts as owner will be. * * *"

If the evidence in a case shows that substantially enclosed land suitable for grazing is occupied and used for that purpose in each year during the full period of the growing season, the presumption should be that the claimant occupied the land adversely and under a claim of right. The record here is devoid of any explanatory circumstances, which would negate the presumption of adverse possession established by the undisputed evidence of defendants' exclusive and continuous possession of the disputed strip up to the fence line for the statutory period. As a result, defendants did meet their burden of proving title thereto by adverse possession.[2] We are, therefore, of the firm and definite conviction that findings 12 and 13, when read together, are clearly mistaken and reflect an improper application of legal principles.

When the trial court fails to find on a material issue, the reviewing court will normally vacate the judgment and remand the case for appropriate findings to be made. 9 Wright and Miller, supra, footnote 1, § 2577; 5A Moore's, supra, footnote 1, ¶ 52.06[2]. We, nevertheless, conclude that remand for appropriate findings is unnecessary since the findings made were sufficient for a clear understanding of the basis of the decision of the district court, and the facts in the record are undisputed. *King v. C.I.R.*, 6th Cir., 458 F.2d 245, 249 (1972); *Janzen v. Goos*, 8th Cir., 302 F.2d 421, 424 (1962); see also, 9 Wright and Miller, supra, § 2577, pp. 699–702.

The judgment here is reversed and remanded to the district court with directions to enter judgment in favor of defendants in terms consistent with this opinion.

---

2. Plaintiffs cite *Wortham v. Nevins*, Tex.Civ. App., 383 P.2d 467 (1964) in support of their argument that casual fencing and sporadic acts of grazing are not sufficient to establish an adverse claim. That case applied Texas authority to the effect that when the use relied upon to support adverse possession is grazing, there must be at the same time evidence of a sufficient enclosure to give evidence that the land was designedly enclosed and to show the assertion of a claim hostile to the true owner. *Orsborn v. Deep Rock Oil Corp.*, 153 Tex. 281, 267 S.W.2d 781, 785 (1954). The facts in *Wortham v. Nevins*, supra, are distinguishable because not only were they insufficient under Texas law, they would be under that of Wyoming. In that case, there was no evidence with respect to the physical characteristics of the disputed lot, and the record failed to affirmatively demonstrate that cattle grazed thereon. In addition, the evidence showed that the claimants did not protest to entry into possession of part of the lot by representatives of the owner.