Sidney B. KRANENBERG, Appellant
(Plaintiff),

v.

MEADOWBROOK LODGE, INC., a
Wyoming Corporation, Appellee
(Defendant).

No. 5387.

Supreme Court of Wyoming.

Feb. 17, 1981.

R. Michael Mullikin, Jackson, signed the brief and appeared in oral argument on behalf of appellant.

No brief was filed nor appearance made on behalf of appellee.

Before ROSE, C. J.*, McCLINTOCK, RAPER **, THOMAS and ROONEY, JJ.

RAPER, Justice.

This appeal arises from an action maintained by appellant to quiet title to certain lands claimed by him under the doctrine of adverse possession. The case was tried before the Teton County district court judge, who found for appellant as to a small portion of land claimed but against him as to the remainder. Here, appellant's challenge is only to that part of the judgment denying him relief. The issue for us to resolve is whether appellant established the essential elements of adverse possession as to the entirety of his claim such that it was error for the trial judge to decide part of the case against him. Appellee neither filed a brief nor appeared in oral argument.

The following diagram will clarify the dispute.

* Chief Justice since January 5, 1981.

** Chief Justice at time of oral argument.

(a) Swing Set
(b) Barbeque
(c) Sandbox
(d) Fence on line
    extending to Right
    Bank

Parcel 1 represents the tract of land as described in his contract for deed and deed when purchased by Jack Kranenberg, father of and a predecessor in title to appellant. Parcel 2 depicts that claimed by appellant in this lawsuit. The shaded portion shows that which the district court judge awarded appellant.

We will reverse.

In 1944 Jack Kranenberg purchased a cabin and the surrounding tract of land adjacent to Flat Creek just outside of Jackson, Wyoming. The sale was consummated under a contract for deed on an installment basis. The vendor—L. G. Gill—informed Mr. Kranenberg that there was a problem in that the property line ran through a corner of the cabin. However, he reassured Mr. Kranenberg by telling him that he—the vendor—would take care of the problem. Shortly thereafter in 1944–1945 Mr. Kranenberg conversed with the neighboring landowner of parcel 2 who told him that

yes, he had spoken with Mr. Gill and that everything was fine, that he, Mr. Kranenberg, need not worry about it. In 1953, Mr. Kranenberg completed the payments and received the deed to the property. Had he checked the deed and had the benefit of a survey, he would have discovered the land description had never been changed of record or otherwise and that his house extended five feet past the boundary of the property described in his deed.

It is reasonably apparent that by the end of 1945, a buck fence had been constructed by the adjoining landowner approximately 70 feet south of the house and that it extended from the edge of the creek some 92 feet in a northwesterly direction parallel to the line as described in his deed. From 1945 until 1963, far in excess of the ten-year statutory period of limitations, § 1–3–103, W.S.1977, Mr. Kranenberg and his family lived in the cabin and used the land surrounding his cabin up to the fence as yard space. During these years, they placed a swing set, sandbox and barbeque in the disputed area and cared for it as a yard by mowing the lawn. They also used a root cellar that had been previously dug there. The evidence is clear that during these years the Kranenbergs as well as their neighbors regarded the disputed property between the log house and the fence, as Kranenberg property.

In 1963, Moss Miles bought the tract of land to the south of the Kranenbergs. At that time he informed the Kranenbergs that the cabin was built partially upon his property. Majorie Kranenberg, who succeeded Jack Kranenberg as owner upon their divorce, tried to negotiate a settlement of her claim. After she conveyed the property to her son, Sidney—appellant—he too tried to reach some accord with the neighbor. The years dragged by with no resolution of differences and in 1979 this suit was commenced by appellant who claimed the property under the doctrine of adverse possession.

The leading case espousing this doctrine in Wyoming is *City of Rock Springs v. Sturm*, 1929, 39 Wyo. 494, 273 P. 908. See also *Near v. Casto*, Wyo. 1980, 613 P.2d 577. In *Sturm*, the Union Pacific Railroad had owned a piece of property abutting a creek which was designated on record as forming the east boundary of the lot. The channel of the creek sometime afterwards moved 80 feet further east. Later Sturm bought the property and assumed that the lot extended the 80 additional feet east to the creek. Many years later when the City claimed interest in the 80 feet and sought to recover it from Sturm, he defended on the basis of adverse possession. This court then considered that doctrine in depth. It first observed:

> " * * * The specific character of possession necessary to make the bar effective is not specified, but courts have uniformly required it to be adverse, and have generally stated, as did this court in *Bryant v. Cadle*, 18 Wyo. 65, 104 P. 23, 106 P. 687, that, in order that possession may be adverse, it must be actual, open, notorious, exclusive, and continuous for the statutory period, hostile, and under color of title or claim of right. Courts are agreed that when actual possession is had, as in the case at bar, color of title is not necessary unless expressly required by statute. * * * " 273 P. at 910.

It then continued by noting the difficulty courts were having with the doctrine and in particular the notion of a claim of right:

> "The main point in dispute herein is the point that has given rise to the greatest controversy in the law of adverse possession, namely, the rule that possession must be taken and held under a claim of right, or title, or ownership. The controversy has been fiercest in cases where possession of the land has been taken under a mistake, which, we may admit, as heretofore stated, was true in the case at bar. The contentions are perhaps not to be wondered at, for, in the absence of specific legislation on the subject, courts would naturally attempt to protect the title of the real owner on the one hand, and to protect a truly adverse possession for the period fixed by the statute on the other. It is admitted by the authorities

that it is difficult, if not impossible, to reconcile the various holdings of the courts on this subject, although we are inclined to think that a greater uniformity, in results, at least, has been attained by the courts within the last few years. And it would seem to be true, as stated in the note to 33 L.R.A. (N.S.) 930, that 'the trend of opinion is against disturbing him whose visible boundaries have existed for the period of the statute of limitations, which is illustrated in many cases where the possession has been held sufficient.' " 273 P. at 911.

The court expressed its views regarding the debate over what constituted a claim of right by commenting:

" * * * And an undue prominence seems at times to have been given to the mental or psychological process involved in the claim of right or intent to claim." 273 P. at 913.

The court then concluded:

" * * * The prime object in prescribing how much adverse possession shall be made manifest, of what elements or requisites it shall be composed, is to advise the real owner that his ownership is in danger, and the law has deemed the time fixed as sufficiently long, so as to give him ample opportunity to protect his right; and if he fails to do so, when thus advised, within the time fixed, he is considered as having acquiesced in the transfer of ownership. *Monnot v. Murphy,* 207 N.Y. 240, 100 N.E. 742. Bearing this in mind, it is a reasonable rule that, when a man has occupied a piece of ground, though under a mistaken belief as to the true boundary, for the period prescribed by law, openly, notoriously, exclusively, and in a manner plainly indicating that he acted as owner thereof, the presumption should be, in the absence of explanatory circumstances showing the contrary, that he occupied the land adversely and under a claim of right, casting the burden of explaining such possession upon the person who disputes his right. * * * " 273 P. at 915–916.

■ Thus, *Sturm* stands for the proposition that the courts should be directing their attention to the adverse possessor's conduct instead of his claim of right. The chief concern should be whether he held dominion over the property in such a manner as to alert the owner of the danger that his property may be lost to another. In a case in which evidence has been presented establishing that a claimant has occupied a piece of ground for the period prescribed by law openly, notoriously, exclusively and in a manner plainly indicating that he is acting as owner, the legal owner must then come forward and show that the possession was permissive or else lose his property.

■ In the case at bar it appears that the trial judge placed undue emphasis upon the subjective claim of right of the appellee which was not supported by evidence. He awarded a small triangular piece of property to the plaintiff that appears to correlate with the testimony of Marjorie Kranenberg as to where she had originally thought the boundary line was. But Ms. Kranenberg's testimony related to a time prior to the statement by appellee's predecessor in interest, the neighboring landowner, that everything was okay. Besides, Ms. Kranenberg had no part in the purchase of the property and little or no memory except as to its use. From 1945 and until 1963, she firmly believed that the fence was the property line and treated the parcel as that of her and her husband's and for a period, hers. The possession and use of the entire piece of property were no different from the Kranenbergs' occupation of that part of the parcel awarded appellant. The appellant is entitled to all or none of parcel 2. The swing set, barbeque, sandbox and surrounding yard were located in that part that was not awarded to the appellant. The evidence in the final analysis is undisputed that appellant's possession and that of his parents was adverse and not permissive. We give great deference to findings of the trial judge and we will not ordinarily disturb them. Still, the presumption of correctness will be overcome if the reviewing court on the entire evidence is left with a definite and firm conviction that a finding

is mistaken. *Shores v. Lindsey*, Wyo. 1979, 591 P.2d 895. The trial judge's finding is mistaken under that standard and it would appear that he was trying to impose some sort of judicial compromise upon the parties which was unsupported by the evidence. A judgment contrary to the evidence cannot stand. *Kvenild v. Taylor*, Wyo. 1979, 594 P.2d 972, 975–976; *Shores v. Lindsey*, supra, 591 P.2d at 899.

■ Here, the continuous possession of the property from 1945 until 1963 and the use of the property for residential purposes is not only a sufficient basis for the presumption that the property had been adversely possessed, but it is also a mandatory one. The defendant in this case presented no evidence to establish any permissive use which could have rebutted the presumption. As we stated in *Sturm*:

"* * * We shall not attempt to define the various circumstances under which the presumption above mentioned may arise. In cases of doubt, the question must be submitted to a jury, or the trial judge, in the absence of a jury; in other cases it may become a pure question of law under undisputed facts. We think that the case at bar is of the latter kind, and that a title by adverse possession has been clearly shown." 273 P. at 916.

Thus, we hold as a matter of law appellant has demonstrated his good title under the doctrine of adverse possession.

Reversed and remanded to the district court with directions to vacate its judgment and enter judgment granting to appellant the property and relief prayed for in his complaint.