**William J. DOENZ and Herbert A. Doenz, Appellants (Defendants),**

v.

**Victor GARBER and Phyllis M. Garber, Appellees (Plaintiffs).**

No. 83–31.

Supreme Court of Wyoming.

June 20, 1983.

Frank C. Richter, Billings, Mont., signed the briefs and appeared in oral argument on behalf of appellants.

Rex O. Arney of Redle, Yonkee & Arney, Sheridan, signed the brief and appeared in oral argument on behalf of appellees.

Before ROONEY, C.J., and RAPER *, THOMAS, ROSE and BROWN, JJ.

RAPER, Justice, Retired.

The genesis of this appeal is an action brought by plaintiffs (appellees) to quiet title in 3.01 acres of land claimed by adverse possession as against defendants (appellants) for over ten years. The trial court, after making findings of fact and conclusions of law, entered judgment for the appellees but required them, at their expense, to replace the fence removed by appellants before appellees asserted their claim. Appellees do not appeal that part of the judgment.

The issues, as presented by the appellants, are:

1. "Whether the appellees have been in actual, open, notorious, exclusive and continuous possession of the real property in question for a period of ten (10) years, which possession is hostile and under a claim of right or color of title."

2. "Whether the appellees have met the burden of proof as to each of the elements of adverse possession."

3. "Whether the court erred in its finding that the appellees have shown that the period of adverse possession was for the requisite ten (10) years."

4. "Whether the court erred by not requiring appellees to prove that any period of adverse possession by their predecessor should be tacked on to the period of adverse possession claimed by appellants."

5. "Whether the appellees possessed the requisite intent to assert an adverse claim against the true owners, the appellants."

6. "Whether appellees' failure to pay taxes weakened the claim of adverse possession sufficiently to disallow it."

7. "Whether appellees' acceptance of the movement of the fence indicates that they did not possess the land with the intent required in order to establish a claim of adverse possession."

8. "Whether the evidence supports the finding that the appellees did not agree to the movement of the fence by their acquiescence to the movement."

Appellees frame the issues differently:

1. "Whether the trial court correctly held that the Garbers [appellees] established the necessary elements of adverse possession to the tract of land in dispute."

2. "Whether the trial court properly held that the Garbers [appellees] possessed the disputed tract for the statutory period of ten years."

3. "Whether the movement of fences by Doenz [appellants] onto the adversely possessed tract held by Garbers [appellees] defeated the adverse possession claim."

4. "Whether the trial court committed reversible error in excluding from its consideration the payment of property taxes by Doenz [appellants]."

* Retired June 13, 1983, but continued to participate in the decision of the court in this case pursuant to order of the court entered June 13, 1983.

We prefer the shorter version of appellees, but within our treatment on that basis will cover, as appropriate, points raised in appellants' statement of issues.

We will affirm.

In order to more readily follow a narrative of the facts, a sketch of the fence location and disputed ground will be helpful:

The appellees acquired the land marked Garber by warranty deed dated March 19, 1971, later recorded on December 30, 1971. They had leased the land up to that time since 1965. The fence in question served as part of an enclosure of about eighty acres used by appellees as a pasture. The east-west fence is about one half mile long and the north-south fence about one quarter mile long. The enclosed area, which was irrigated in part, was used to graze cattle and produce hay. The appellants, in connection with a transfer of title to lands between them, employed a surveyor to locate their lands on the ground. As a result of the survey the deed line established that the fence line which had been in place for some sixty years encroached upon the lands of appellants by some twenty to thirty feet. Appellants had never used the lands south and east of the old fence.

Following trial, the district judge made findings of fact, paraphrased: that appellees had occupied said enclosure for more than ten years prior to the commencement of the legal proceedings; that between September 1981, and March 1982, appellants built a new fence on the true legal boundary and that there was disputed testimony that appellees' son, David Garber, had agreed to the relocation of the fence; and that appellees became aware of the fence relocation and did not object until the east-west portion of the fence was completed and the posts for the north-south fence had been put in. The court's conclusions of law are paraphrased: that appellees acquired fee simple ownership to the disputed tract by solely and exclusively possessing it for more than ten years and the possession was open, notorious, adverse and hostile to the appellants; that appellants had no claim in said tract of land; and that appellees were

entitled to move the new fences back to their original fence lines at their own expense.

Other facts will be set out as necessary in disposition of the issues.

## I

■ Were the necessary elements of adverse possession present? The elements of adverse possession consist of actual, open, notorious, exclusive and continuous possession of another's real property for the statutory period of ten years[1] under a claim of right or color of title. *Rutar Farms and Livestock, Inc. v. Fuss,* Wyo., 651 P.2d 1129 (1982); *Farella v. Rumney,* Wyo., 649 P.2d 185 (1982); *Shores v. Lindsey,* Wyo., 591 P.2d 895 (1979); *City of Rock Springs v. Sturm,* 39 Wyo. 494, 273 P. 908, 97 A.L.R. 1 (1929). If the other elements exist, it is the policy of the law to give the adverse possessor a title when an action to recover lands is barred by the statute of limitations; the possessor is vested with a fully new and distinct title. *Stryker v. Rasch,* 57 Wyo. 34, 112 P.2d 570, 136 A.L.R. 770, reh. denied 113 P.2d 963 (1941).

There is no question but that appellees actually, openly, notoriously and exclusively occupied the land between the fence line and the deed line. They used it to graze cattle and for hay which was cut. It had never been so used by appellants, nor had any question about the boundary ever before been raised, though neighbors of appellees for many years.

## II

Did the appellees possess the disputed area for ten years? The appellants contend that while appellees received a deed to the lands on March 19, 1971, it was not recorded until December 30, 1971; so, therefore, adverse possession could not start until the latter date. Prior to the expiration of ten years after the recording, appellants had built their new fence on the east-west deed line, had downed the old fence, and the new posts were up on the north-south line. The survey was undertaken prior to March 1981. Appellants were informed of the discrepancy by the surveyor in March 1981. Appellants started new fence construction in September 1981, less than ten years after the deed was recorded. Appellants add to that the further fact that the court action, appellees' first recognizable objection, was not started until April 1982, after appellants claim they had stopped the ten-year continuity of appellees' possession by reentry. Appellants rely on § 34-1-120, W.S.1977:

"Every conveyance of real estate within this state, hereafter made, which shall not be recorded as required by law, shall be void, as against any subsequent purchaser or purchasers in good faith and for a valuable consideration of the same real estate or any portion thereof, whose conveyance shall be first duly recorded."

Appellants' position is that there must be some notice to the owner that adverse possession has begun, citing *McKnight v. Basilides,* 19 Wash.2d 391, 143 P.2d 307 (1943), and that recording of the deed is the required notice. That case involved adverse possession as between co-tenants and also held that an ouster of one tenant-in-common by his co-tenant requires stronger and more convincing evidence than is necessary to sustain the ordinary claim of adverse possession. The court went on to recognize with respect to co-tenants a rule that there must be actual notice or the hostile character of possession must be so manifest, open, and notorious that notice is presumed. No recording statute was involved in *McKnight.* The case is not on point.

In *Near v. Casto,* Wyo., 613 P.2d 577 (1980), this court held that where the land under dispute was within the fence line of the adverse possession claimants who had exercised dominion over it by leasing for ranching and oil and gas and conducting their own ranching operations, and who believed they possessed the land to the fence line for more than ten years, all the essen-

---

[1] Section 1-3-103, W.S.1977, provides:
"An action for the recovery of the title or possession of lands, tenements or heredita-ments can only be brought within ten (10) years after the cause of such action accrues."

tial elements of adverse possession were present. In *Shores v. Lindsey,* supra, this court recognized that pasturing of livestock during the grazing season is continuous dominion and control. The rule was reiterated in *Farella v. Rumney,* supra.

The appellants have overlooked the language of the rule as being in the alternative, "color of title *or* claim of right." Appellants look only at the "color of title." A color-of-title situation would be one in which there was a void deed. *Knight v. Boner,* Wyo., 459 P.2d 205, 207 (1969), defined "color of title" as an instrument which has a semblance or appearance of title but is not title in fact or law. However that may be, a claim of right is sufficient in this state for the purpose of initiating adverse possession; and a deed, even void on its face, is a color of title sufficient to constitute a claim of color of title. *Bruch v. Benedict,* 62 Wyo. 213, 165 P.2d 561 (1946).

Even though § 34–1–120, W.S. 1977, is a notice statute, it is intended to void another's conveyance of title to the same land. Appellees' deed did not convey to the fence line nor do appellants claim that it does. It, therefore, would not be any color of title since it did not embrace the occupied property. The deed to appellees coupled to the presence of the old fence plus use to the fence gave them a claim of right. Appellants are not subsequent purchasers within the statute. They have adjoined the fence for long over ten years. The presence of the fence and the continuous farming operations by appellees on the enclosed land put appellants on notice to make inquiry. Failure to record a deed does not render it void where prior to the conveyance subsequent purchasers are put on due inquiry and with reasonable investigation the existence of the deed could have been determined. *Soppe v. Breed,* Wyo., 504 P.2d 1077 (1973). If on notice, appellants, even if under the statute, would not hold a role as purchasers in good faith because of their actual notice of appellees' possession.

### III

Did the construction of the new fence and removal of the old fence by appellants defeat the adverse possession claim? The appellees' first notice that appellants were asserting a claim to land south of the old fence was in September 1981, when they noticed fence posts along the deed line. Appellants never advised appellees what they were doing but had instructed the surveyor to advise appellees of the property line he had established. The surveyor did not do that until David Garber, appellees' son [2], went to the surveyor's office in Sheridan with considerable concern to inquire about what was going on and then found out. Appellees consulted with their attorney. He advised moving with caution and watching developments until the matter could be adequately investigated and a position taken. On December 14, 1981, appellees met with one of the appellants, William Doenz, to object to movement of the fence to the deed line and attempt a peaccable settlement. Settlement efforts were tried again in January 1982, but failed; appellees were advised by appellants to go to court. By March 1982, appellees were fenced out of the disputed land. This litigation was initiated by filing of the complaint on April 23, 1982.

While appellants contend David Garber expressed himself in such a way that the new fence line was approved, David Garber denied that he ever did, nor did he have authority to do so. The evidence supports his position. By finding in favor of appellees, the trial judge settled any conflict in the testimony.

When specific findings of fact are made by the trial court on evidentiary mat-

---

**2.** David Garber (not a party to this action) has no ownership interest in the lands involved. He performs some management functions in the ranching operation on the appellees' lands. The ranching operation is incorporated under the name of Garber Agra Business Incorporated, of which David is one of the directors. His authority is to buy and sell livestock, purchase machinery, and authorizes repairs, but he has no authority to make commitments as to the real estate.

ters, they are presumed correct; an appellate court will not disturb them unless they are clearly erroneous or against the great weight of the evidence. The review standard recognizes that deference must be given to the opportunity of the trial court to judge the credibility of the witnesses, and that a reviewing court will not set aside the court's findings merely because it might have reached a different result. The presumption of correctness can be overcome if the reviewing court on the entire evidence is left with a definite and firm conviction that a finding is mistaken. *Shores v. Lindsey,* supra. We are unconvinced that the trial judge's findings are mistaken. His conclusions of law are in accord with the law heretofore announced, so the exception to the rule of review which would invalidate the findings, if based upon a misconception of the law, would not apply. *Shores v. Lindsey,* supra.

 The movement of the fences such that for a short period of time the old fence was down and the new fence was in place on the deed line did not defeat the adverse possession claim on the ground that possession was not continuous to the time of filing of the complaint. This court in *Bruch v. Benedict,* supra, approved the rule that a temporary break or interruption, not of an unreasonable duration, does not destroy the continuity of the adverse claimant's possession, depending somewhat upon the intention of the adverse possessor as shown by the circumstances of the case.

There was, as one of the surrounding circumstances, only about a month between the time of completion of the new fence and the filing of an action. The other facts and circumstances here show no intention to give up their adverse possession claim. This was adequately demonstrated by the remonstrances of appellees, and their attempts to negotiate a settlement. They entered in litigation as a last resort within a very short time. The claimants kept their "flags waving." *Rutar Farms and Livestock, Inc. v. Fuss,* supra; *Bruch v. Benedict,* supra. Appellees do not depend upon tacking—that is use by their predecessors in title. For a definition of tacking, see *Rutar*

*Farms and Livestock, Inc. v. Fuss,* supra. We see no error.

 The district judge's judgment that the expense of moving the fence off the deed line back to the old fence line was not appealed by appellees. A non-appealing party may not attack a judgment. *Wyoming State Treasurer v. City of Casper,* Wyo., 551 P.2d 687 (1976). Appellees do not express any disagreement with the trial judge in that regard.

## IV

 Nonpayment of taxes on adversely possessed land, while a consideration, does not in itself destroy an adverse possession claim. *Rutar Farms and Livestock, Inc. v. Fuss,* supra; *Meyer v. Ellis,* Wyo., 411 P.2d 338 (1966). Nonpayment of taxes by the claimant is usually the case where use to a fence line rather than deed line is the primary basis of the claim. As pointed out in *Meyer* our Wyoming statute does not require payment of taxes in order to establish adverse possession as do some states. All the other facts and circumstances in the case now before us override any question of taxes. There was no error in that regard.

Affirmed.