**Earl HILLARD, Appellant (Plaintiff),**

v.

**Gary R. MARSHALL; Thomas W. Dennison and Barbara W. Dennison, husband and wife, Appellees (Defendants).**

No. 94–6.

Supreme Court of Wyoming.

Jan. 30, 1995.

Lawrence A. Yonkee and John G. Fenn of Yonkee & Toner, Sheridan, for appellant.

Greg L. Goddard and John P. LaBuda of Goddard, Perry & Vogel, Buffalo, for appellee Marshall.

Hayden F. Heaphy, Jr. of Burgess, Davis & Cannon, Sheridan, for appellees Dennison.

Before GOLDEN, C.J., and THOMAS, CARDINE,* MACY and TAYLOR, JJ.

CARDINE, Justice, Retired.

This action concerns title to a nine-acre tract of land which was fenced in by the plaintiff's predecessor in interest. Earl Hillard (Hillard) appeals from the district court's denial of his claim of title to the nine acres by virtue of adverse possession and quieting title in the defendants, Thomas and Barbara Dennison.

Hillard presents four issues for our consideration:

1. Did the District Court err by denying Appellant a presumption that Appellant's possession of a nine (9) acre tract of land was adverse where Appellant actually occupied the tract under a mistaken belief as to the true boundary, for the period prescribed by law, openly, notoriously and exclusively, and in a manner plainly indicating that he acted as owner thereof?

2. Did the Court err by concluding that livestock grazing and fence maintenance are not uses which plainly indicate that Appellant acted as owner of the land in his possession?

3. Did the Court err by denying Appellant's claim of adverse possession for the reason that it was more convenient to maintain the fence in its location rather than on the deed line?

4. Did the District Court err by holding that a fourteen (14) acre tract was adversely possessed by Appellant while another nine (9) acre tract at a different location on the same place was not?

* Retired July 6, 1994.

## FACTS

This dispute centers around land that was originally owned by one person, Melissa Ray Schrater. The land in question is located near Buffalo, Wyoming and includes a portion of Johnson Creek. After World War I, Melissa Schrater split the land with her brother, Frank. Sometime in the early 1920s, a fence was built separating the two parcels. The location of the fence has never changed.

After Frank died in 1940, his widow, Eleanor, leased the land to others. In 1950, Hillard began leasing the land; in 1961, he purchased the land outright. Hillard irrigated portions of the land, growing at various times, oats, alfalfa, wheat and hay. He also pastured cattle on some sections.

Meanwhile, Melissa Schrater's land had ended up in the hands of Gary Marshall (Marshall), who bought it in 1991. Marshall subdivided the land and sold a tract to Thomas and Barbara Dennison (the Dennisons). Marshall had a survey of the property done which revealed that Hillard's fence line did not match the property line.

Relevant to this case are two tracts of land. The first is a 14.19–acre tract (the fourteen-acre tract) belonging to Marshall which was enclosed by Hillard's fence. The second is a separate 9.01–acre tract (the nine-acre tract) of the Dennisons which was also enclosed by Hillard's fence.[1]

The district court found that Hillard had grazed cattle, irrigated and hayed and leased portions of the fourteen-acre tract. The court concluded that Hillard had "occupied the * * * 14.19 acre tract of land for the

period prescribed by law (more than 10 years), openly, notoriously, exclusively, and in a manner plainly indicating that he acted as owner thereof." After concluding that Marshall had failed to meet his burden of explaining Hillard's possession, the court quieted title in the fourteen-acre tract in Hillard.

The court, however, reached a different conclusion with regard to the nine-acre tract, which is adjacent to Johnson Creek. The court found that Hillard had used the tract for grazing and that the tract was not "usable for much else." The property line ran near Johnson Creek; and the terrain there contained brush, trees and was swampy. The court concluded that the fence was one of convenience, and therefore Hillard had failed to establish color of title. Title was quieted in the Dennisons.

Hillard now appeals the trial court's decision that he had failed to adversely possess the nine-acre tract of land.

## DISCUSSION

 In order to establish adverse possession, the claiming party must show actual, open, notorious, exclusive and continuous possession of another's property which is hostile and under claim of right or color of title. *Rutar Farms & Livestock, Inc. v. Fuss*, 651 P.2d 1129, 1132 (Wyo.1982); *City of Rock Springs v. Sturm*, 39 Wyo. 494, 502, 273 P. 908, 910 (1929). Possession must be for the statutory period, ten years. W.S. 1–3–103 (1988); *Connaghan v. Eighty–Eight Oil Co.*, 750 P.2d 1321, 1323 (Wyo.1988); *Doenz v. Garber*, 665 P.2d 932, 935 (Wyo.

---

1. The tract is located in the NE¼SW¼ and the East½NW¼ of Section 7, Township 51 North, Range 82 West, 6th P.M., Johnson County, Wyoming, described as follows:

 Commencing at the southwest corner of said Section 7 (3″ brass cap per L.S. 324); thence N27°1812″E, 2909.44 feet to the POINT OF BEGINNING, said point being the intersection of a fence line and the west line of said NE¼ SW¼; thence N57°0344″E, 130.02 feet along said fence line to a point; thence N18°1918″E, 343.47 feet along said fence line to a point; thence N01°09●04″W, 286.50 feet along said fence line to a point; thence N08°2640″W, 44.57 feet along said fence line to a point;

 thence N04°3640″W, 245.72 feet along said fence line to a point; thence N02°4647″W, 223.01 feet along said fence line to a point; thence N03°3447″W, 1172.69 feet along said fence line to a point; thence N37°1741″W, 30.74 feet along said fence line to a point; thence N69°0501″W, 37.10 feet along said fence line to a point; thence N07°2726″E, 90.65 feet along said fence line to a point; thence S74°3328″W, 68.73 feet along said fence line to a point on the west line of said East½ NW¼; thence S00°0926″E, 1343.89 feet along said west line to a point (aluminum cap per L.S. 324); thence S00°0922″E, 1130.76 feet along said west line to the POINT OF BEGINNING.

1983). Where there is no clear showing to the contrary, a person who has occupied the land for the statutory period, in a manner plainly indicating that he has acted as the owner thereof, is entitled to a presumption of adverse possession; and the burden shifts to the opposing party to explain such possession. *Meyer v. Ellis,* 411 P.2d 338, 342 (Wyo. 1966) (*quoting City of Rock Springs v. Sturm,* 39 Wyo. at 517, 273 P. at 915–16). However, if a claimant's use of the property is shown to be permissive, then he cannot acquire title by adverse possession. *Ellis,* 411 P.2d at 344 (*citing Johnson v. Szumowicz,* 63 Wyo. 211, 228–29, 179 P.2d 1012, 1017 (Wyo.1947)).

■ In some circumstances, enclosing land in a fence is sufficient to "raise the 'flag' of an adverse claimant." *Ellis,* 411 P.2d at 343; *Doenz,* 665 P.2d at 936 (presence of fence and continuing farm operations put record landowners on notice of adverse claim). The pasturing of animals within a substantial enclosure is sufficient to establish the elements of adverse possession. *Farella v. Rumney,* 649 P.2d 185, 186–87 (Wyo.1982) (*quoting Shores v. Lindsey,* 591 P.2d 895, 902 (Wyo.1979)). However, a fence kept only for the convenience of the parties or to separate pastures or irrigated meadows from grazing lands has no effect on the true boundary between tracts. *Sowerwine v. Nielson,* 671 P.2d 295, 297 (Wyo.1983); *State v. Vanderkoppel,* 45 Wyo. 432, 439, 19 P.2d 955, 957 (Wyo.1933).

Hillard's argument is that the trial court improperly denied him the presumption to which he was entitled. Hillard claims that he established the elements of adverse possession: he occupied the land in a hostile manner and under color of title (by his predecessor's fencing in the tract) in an actual, open, notorious, exclusive and continuous manner and by utilizing the property for what it was best suited—grazing.

Hillard also argues that the evidence that the topography dictated the location of the fence does not clearly prove a permissive use. Hillard asserts that the only evidence that the fence was one of convenience was the testimony of a surveyor who described the lay of the land and concluded that the fence was placed off of the property line because of the topography. Hillard claims that the burden was on the Dennisons to prove that the "topography dictated the fence location to such a degree that it was obvious that an agreement was made between the adjoining owners." Hillard surmises that if he had been properly accorded the presumption, the Dennisons' evidence was not enough to overcome that presumption.

■ A presumption is a required conclusion in the absence of explanation. *See* 1 C. Mueller & L. Kirkpatrick, *Federal Evidence* § 66 (2nd ed. 1994). The concept of a presumption of adverse possession in favor of the claiming party was first articulated by Justice Blume in *Sturm:*

> [W]hen a man has occupied a piece of ground, though under a mistaken belief as to the true boundary, for the period prescribed by law openly, notoriously, exclusively and in a manner plainly indicating that he acted as owner thereof, the presumption should be, in the absence of explanatory circumstances showing the contrary, that he occupied the land adversely and under a claim of right, casting the burden of explaining such possession upon the person who disputes his right.

39 Wyo. at 517, 273 P. at 915–16. Thus, in the context of adverse possession, a presumption arises in favor of the claimant when a *prima facie* case has been made, requiring a conclusion in favor of adverse possession absent explanation. Similarly, it could be said that a presumption in favor of the record title holder exists, unless and until the adverse claimant makes out his *prima facie* case, because the initial burden of proof is on the party claiming adverse possession. *Sowerwine,* 671 P.2d at 302; *Miller v. Bell,* 764 P.2d 389, 390 (Colo.App.1988) ("An initial presumption favors the record title holder as against the adverse possession claimant."); *Accord Gonthier v. Horne,* 576 A.2d 745 (Me. 1990); *Miceli v. Foley,* 83 Md.App. 541, 575 A.2d 1249 (1990). Once the adverse possession claimant has made out his *prima facie* case, and absent any explanatory circumstances to the contrary, the burden shifts to the opposing party to produce evidence con-

trary to the presumption. *Sturm,* 39 Wyo. at 517, 273 P. at 915–16; *Turner v. Floyd C. Reno & Sons, Inc.,* 769 P.2d 364, 368 (Wyo. 1989); *accord Szombathy v. Shell Oil Co.,* 676 S.W.2d 15, 18 (Mo.App.1984).

The district court could have arrived at its decision through one of two routes. First, it could have concluded that Hillard had not made a *prima facie* case because the convenience fence was an explanatory circumstance to the contrary; or, second, it could have found that Hillard had made out a *prima facie* case and that he was entitled to a presumption but concluded that the evidence that the fence was one of convenience had rebutted the presumption. The record is devoid of any indication by which of these means the trial court did arrive at its decision.

▮▮▮ We conclude that it does not matter because under either scenario, the district court's decision would stand. Whether the record title holder is seeking to show explanatory circumstances to the contrary or is attempting to rebut a presumption, the standard of proof does not change. A presumption *shifts* the burden of proof, it does not heighten the standard of proof. W.R.E. 301(a), *Casper Iron & Metal, Inc. v. Unemployment Ins. Comm'n,* 845 P.2d 387, 393 (Wyo.1993). Thus, if the evidence that the fence was one of convenience is sufficient to establish that fact in the first place, then it is sufficient to rebut a presumption.

▮▮▮ A presumption is not a magic elixir that imbues its holder with an exalted level of protection against an evidentiary attack. A presumption simply means that in the absence of any other evidence to the contrary, the fact presumed is conclusive. If, however, there is sufficient evidence to the contrary, then it becomes a question of weight and credibility for the trier of fact. *See Ellis,* 411 P.2d at 345 ("when there is a question of doubt as to whether the possession was adverse, it becomes a question of fact to be determined by the trier of the facts") (*citing Sturm,* 39 Wyo. at 518, 273 P. at 916). Thus, in reality, what Hillard is challenging here is the sufficiency of the evidence to support the trial court's conclusion that the fence was one of convenience.

We sustain a trial court's findings and judgment on questions of evidence unless they are clearly erroneous or contrary to the great weight of the evidence, while keeping in mind the following principles:

> The judge who presided at the trial heard and saw the witnesses. He is in the best position to determine questions of credibility and weigh and judge the evidence, both expert and non-expert. Thus, on appeal, it is a firmly established and oft-stated rule that we must accept the evidence of the successful party as true, leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference that may fairly and reasonably be drawn from it.

*Sowerwine,* 671 P.2d at 301; (*citing Albin Elevator Co. v. Pavlica,* 649 P.2d 187 (Wyo. 1982) and *City of Rock Springs v. Police Protection Ass'n,* 610 P.2d 975 (Wyo.1980)).

▮▮▮ The trial court found that it was more convenient to place the fence where it was rather than on the property line because of the terrain. The evidence supporting that finding came from a surveyor who had observed the terrain and from other testimony that showed that the fence followed the property line in other areas, implying that the people who built the fence knew where the property line was located. This was sufficient evidence for the trial court to conclude that the fence was one of convenience, and its ruling was not clearly erroneous.

▮▮▮ Hillard, however, insists that the evidence would not be sufficient to rebut the presumption of adverse possession. His argument is predicated on his evidence that he had grazed cattle on the tract, which was not suitable to other purposes, and our prior cases finding that grazing cattle on land suited for that activity can be the basis of an adverse possession claim. *See Shores v. Lindsey,* 591 P.2d 895, 901 (Wyo.1979). However, as we have already pointed out, a fence "kept simply for convenience (as held by the court in this case) has no effect upon the true boundary between tracts of land." *Sowerwine,* 671 P.2d at 297. This is so be-

cause a fence of convenience creates a permissive use, and a permissive user

> cannot change his possession into adverse title no matter how long possession may be continued, in the absence of a clear, positive and continuous disclaimer and disavowal of the title of the true owner brought home to the latter's knowledge; there must be either actual notice of the hostile claim or acts or declarations of hostility so manifest and notorious that actual notice will be presumed in order to change a permissive or otherwise non-hostile possession into one that is hostile.

*Stewart v. Childress,* 269 Ala. 87, 111 So.2d 8, 13 (1959). The record does not disclose any evidence nor does Hillard point us to any which demonstrates that he acted in a manner that would have turned his permissive possession into a hostile one.

▮▮▮ Finally, we briefly address two other issues raised by Hillard. First, Hillard asserts that two witness depositions should not be considered because the deponents lack personal knowledge and their testimony is hearsay. Assuming that Hillard's characterization is true, we find no error. The trial court stated that it was not going to consider one of them, and Hillard has failed to demonstrate that the court relied on the other. On appeal, we presume that the district court disregarded any improperly admitted evidence unless the record affirmatively demonstrates that the court's decision was influenced by the evidence. *Schacht v. First Wyoming Bank, N.A. Rawlins,* 620 P.2d 561, 564 (Wyo.1980); *X v. Y,* 482 P.2d 688, 691 (Wyo.1971).

▮▮▮ Second, Hillard argues that *Kranenberg v. Meadowbrook Lodge, Inc.,* 623 P.2d 1196 (Wyo.1981) establishes the rule that adverse possession is an all-or-nothing proposition. He asserts that since the possession of the nine-acre tract arose out of the same set of circumstances as the fourteen-acre tract, by adversely possessing one he necessarily had to have adversely possessed the other.

In *Kranenberg,* the adverse claimant had built a portion of his home on the defendant's land. A contiguous tract of that land was also used by the claimant as a yard, including

the placement of a swing set, a sandbox, a barbecue and a root cellar. *Kranenberg,* 623 P.2d at 1197–98. The district court found that the claimant had adversely possessed the portion around the house but not that portion which was utilized as a yard. *Kranenberg,* at 1196. We reversed, holding that the continuous possession of the entire portion of the property for the same purpose, residential use, was sufficient to show adverse possession. Since the defendant had failed to demonstrate a permissive use, we concluded that the claimant had adversely possessed the entire tract. *Kranenberg,* 623 P.2d at 1199–1200.

*Kranenberg* is distinguishable from this case. Here the land claimed is neither contiguous nor was used for the same purposes. Hillard used the fourteen-acre tract mainly for farming, while the nine-acre tract was exclusively used for grazing purposes. Further, the fact that the two parcels are physically separate could mean there are different reasons for them being fenced in, as the trial court found to be the case here. Although the tracts were created at the same time, their non-contiguous nature and the different uses on each requires the adverse claimant to prove his case for each tract individually. Hillard failed to do that. *Kranenberg* is not applicable.

### CONCLUSION

▮▮▮ In sum, there is a presumption in favor of the record title holder which can be rebutted if the adverse possession claimant makes, in the absence of explanatory circumstances to the contrary, a *prima facie* case of adverse possession, whereupon the burden shifts back to the record title holder who must produce evidence contrary to the presumption by showing that the claimant's possession was permissive. If the title holder can do that, then it becomes a question of weight and credibility to be determined by the trier of fact.

Here, there is sufficient evidence to support the trial court's conclusion that the fence enclosing the nine-acre tract of the Dennison's land was one of convenience.

Affirmed.

TAYLOR, Justice, dissenting, with whom MACY, J., joins.

Earl Hillard purchased 310.62 acres of land near Buffalo, Wyoming from Eleanor M. Schrater in December, 1961. Prior to Mr. Hillard's purchase of the land, he had leased the same tract of land for approximately ten years. The entire acreage is enclosed by a fence which was erected in the early 1920's. Within the fenced perimeter, there is a 14.19 acre tract of land and a 9.01 acre tract of land. Both of these tracts of land are the subject of this dispute. The district court found that Mr. Hillard established title by adverse possession to the 14.19 acre tract, but not to the 9.01 acre tract.

Mr. Hillard used both tracts of land in his farming and ranching operations for more than thirty years. Both tracts of land are within the same boundary fence maintained by Mr. Hillard. Mr. Hillard's neighbors recognized and acknowledged the fence to be his property line.

In my mind, the possession by Mr. Hillard of both the 14.19 acre tract and the 9.01 acre tract is virtually identical. Mr. Hillard's possession of both tracts of land was open, notorious, exclusive and continuous for thirty years. His use of both tracts was hostile and under claim of right.

I would reverse the district court and quiet title to the 9.01 acres in Mr. Hillard.