# Kribbs *versus* Downing.

When a person against whom a fraud has been perpetrated lies by for twenty-one years without causing it to be investigated, he will not then be permitted to show it: for after so long an acquiescence the presumption of law is conclusive that no fraud was committed.

Ejectment is a possessory action, and the plaintiff cannot recover in this form land of which he is in the actual possession at the time.

Specific performance of an agreement for the conveyance of land, cannot be enforced by a conditional verdict for any other land than such as is embraced in the agreement.

[Kribbs *v.* Downing.]

Error to the Common Pleas of *Clarion county.*

This was an ejectment for 350 acres of land, brought by James Downing and others against George Kribbs and others. In 1801, or 1802, a man by the name of Samuel Parker commenced an improvement on the land in dispute. He deadened some trees and commenced the building of a cabin, but had no residence or cultivation on the land. In 1805, Sally Cook, a single woman, entered upon the land, and, with the aid of her brothers, commenced a resident settlement upon the land—built a cabin—cleared land and resided upon the tract. In October of the same year she was forcibly driven off by Parker. He then sold 100 acres, including his own and Sally Cook's improvement, to James Platt, who sowed some grain in the fall, which he harvested the following summer and took it away. Sally Cook instituted a prosecution against Parker for forcible entry and detainer, which was to be tried in September, 1806. On the 16th of September, 1806, the matter was compromised between them, by which she relinquished all claim to the land except 50 acres, and gave up the prosecution, and Parker agreed to procure the title from the Commonwealth, and convey to her 50 acres adjoining Daniel Cook, he to pay the costs, &c.

This agreement was made at Franklin, in Venango county, the premises at that time being within that county. J. W. Hunter was a witness to this agreement, and, it was alleged, was the counsel of Sally Cook, in the prosecution against Parker. John Witherup was at that time the sheriff of Venango county. On the same day, endorsed on the agreement between Parker and Sally Cook, was an acknowledgment by Parker that J. W. Hunter and John Witherup should be equally concerned with him in the land, after deducting the 50 acres for Sally Cook; and, on the 25th of May, 1836, a release of his interest by Hunter to Witherup. On the 13th of June, 1836, Witherup conveyed his interest, being two-thirds, to George Kribbs, one of the defendants in this suit. Parker sold his third of the land to William McCall, it being severed from the rest of the land, and had been surveyed and patented. On the 6th of July, 1836, Kribbs procured a warrant, and had the land surveyed, including the 50 acres which had been allotted to Sally Cook, and took a patent for it. In his application he claims an improvement commenced in 1805, being the one made by Sally Cook, as there was no other resident settlement besides upon it.

In 1807, Sally Cook was married to Jacob Keely, and she and her husband lived upon the land till 1815, when they sold to Peter Downing, who continued to reside on it till his death, in 1834. His family remained there at the time of trial.

Downing, in 1820, had a survey made by the deputy surveyor of the whole tract. He knew of the agreement of 1806, and did

not appear to claim at that time more than the fifty acres. The balance of the land was assessed in the names of Hunter, Witherup, and Parker.

The land, except the 50 acres in possession of Keely and wife, and afterwards of Downing, appears with some intervals on the unseated land list from 1808 to 1830, and in 1828 was sold at treasurer's sale, and purchased by Witherup.

The plaintiffs contended that the agreement of 1806 was a fraud upon Sally Cook, in which her counsel, Hunter, and Witherup and Parker participated: and that her possession was sufficient notice to the defendants purchasing a title thus situated. They also contended that the warrant, survey, and patent of Kribbs was an ouster of plaintiffs of the fifty acres; and no conveyance having been made according to the agreement, that the plaintiffs would be entitled to a conditional verdict to enforce the execution and delivery of the deed for that part.

The defendants relied upon the compromise made in 1806, and the long acquiescence of the parties. The treasurer's sale to Witherup in 1828, and that neither Sally Cook, Keely nor Downing ever claimed more than the fifty acres, which they had been and still were willing to convey.

That part of the charge of the Court (GALBRAITH, P. J.) which relates to the questions upon which this Court decided the cause, was as follows:—

"It is clear from this statement that the plaintiffs are entitled to a verdict for something. It is said, however, that the defendants are not in possession of the fifty acres, do not claim it, and have expressed a willingness to convey that quantity to the plaintiffs—but that is not a sufficient answer under any circumstances disclosed in the evidence. They have made an entire survey including the residence and possession of the plaintiffs, and without their consent, and without even making a record of their right in the land office, taking out a patent from the Commonwealth covering the whole tract. This is such an ouster as will entitle the plaintiffs to a verdict for the fifty acres at least, or for a verdict to be released on making a good title to the fifty acres within a reasonable time. If the agreements of September, 1806, were obtained from Sally Cook by the fraud of her counsel, and Witherup concerned in it—and she and her husband continued the possession under that delusion; transferred their entire right to Downing, and he continued to act under the same delusion, and under misrepresentations of Witherup, and has made no new agreement of his own, or adopted and recognised none such as his own,—if Witherup obtained the right of Hunter with knowledge of the wrong practised upon Sally Cook and her husband, Keely, and upon Downing afterwards, the possession of Downing, or his heirs on the land was sufficient to put Kribbs upon notice, and he would

[Kribbs *v.* Downing.]

take the right, subject to all its infirmities, and the plaintiffs would be entitled to a verdict without any conditions, on the principle of Hunter *v.* Howard, in 10 *Ser. & R.* If, however, Downing purchased only fifty acres, and afterwards got a survey stating that Witherup was owner or to be the owner on certain conditions, give it in for assessment, agreeing of himself that Witherup was to take out the title for the whole, and he to be the owner of part, all under one residence, settlement, survey, &c., and this all fair and understood between Witherup and Downing, then the recovery might be confined to the fifty acres by a conditional verdict, as already suggested. If, again, the agreement was fraudulent as regards Hunter particularly, the counsel of Sally Cook, and he induced the agreement, at the same time taking an interest in it himself, Hunter would stand as trustee for his client, Sally Cook, and the interest transferred to him would really belong to her. If this were so did Witherup know it, or was he bound to take notice of it? The plaintiffs say there is evidence of this in the transfer from Hunter to him in the peculiar wording of this instrument. There is some force in this, and you may take it into consideration. If, besides this, Downing acted in mistake of his rights, in his acts and declarations in relation to Witherup's claim; if, added to this, there was unreasonable delay on the part of Witherup in performing the agreement for Parker in paying the purchase-money and perfecting the title, and finally, the defendants (the plaintiffs having no opportunity of ascertaining the true state of the land) took out the title from under the plaintiffs in their own name without consulting them, and without their consent, the jury might find a verdict for the plaintiffs to be released, on making and filing of record within a reasonable time, a deed from the patent not for the fifty acres alone, but for so much more as the interest of Hunter would amount to, if the evidence justify that conclusion upon the principles stated, designating it in such manner as to be certainly ascertained, and on payment of the costs of suit. The plaintiffs were entitled as the settlers to have the legal title in their own name, or to be known in the application of record, or in some way to have the portion they were entitled to, secured before the title-papers were taken out of the office. No deed has yet been given or tendered to them, and their equities can be thus secured by a conditional verdict."

The jury found for the plaintiffs to be released on defendants making the plaintiffs a deed for fifty acres of land, across the western end of the tract, and also for one undivied sixth part of the balance of the land in dispute, within one year from the date of the verdict.

The instructions of the Court, the form of the verdict, and the entry of judgment thereon, constituted the foundation of the errors assigned.

[Kribbs *v.* Downing.]

*Lathy* and *Corbet,* for plaintiffs in error.—If the contract was fraudulent as to Mrs. Keely, she could avoid it; but their vendees, if they got all they purchased, would have no such rights. These plaintiffs are strangers and volunteers, and cannot allege it if it even existed: 6 *Harris* 137.

There was nothing in the case to show that Kribbs had any notice of the alleged fraud. There was nothing in the agreement to indicate it; and nothing in the possession of Keely or Downing to indicate any claim beyond the 50 acres: 4 *Wh.* 259; 2 *Watts* 275; 7 *Watts* 267; 1 *Barr* 474; 4 *Harris* 364; 7 *Watts* 167; 7 *W. & Ser.* 442.

Could the plaintiffs recover the 50 acres of which they were in possession? It is a possessory action. At common law the plaintiff had always to prove the defendant's possession. The Act only makes the service of the writ *prima facie* evidence of defendant's possession; it merely shifts the burden of proof; but if the defendant proves himself out of possession, it is a flat bar: 9 *Ser. & R.* 26; 13 *Ser. & R.* 110; 10 *Ser. & R.* 151; 5 *Watts* 70; 3 *Barr* 365; 7 *Harris* 434.

*Myers* and *Campbell,* for defendants in error.—Substantial justice could only be done in this case by a conditional verdict. By adding the condition, the verdict operates as a decree in chancery: 8 *Ser. & R.* 491; 4 *Id.* 288; 9 *Id.* 315; 13 *Id.* 171; 4 *Binn.* 41; 3 *Barr* 172.

Was the verdict for Hunter's share right? He paid nothing; the jury found his conduct fraudulent. It was left to the jury whether Keely and wife transferred their *entire* right to Downing, or but the 50 acres. The jury found the former. If there was no fraud on his part, but had been a gift from his client, Sally Cook, he could not have held it: 2 *Harris* 506; 8 *Ser. & R.* 417; 3 *Barr* 172.

Witherup's treasurer's deed, in any aspect, was worthless, as the title was not out of the Commonwealth: 9 *Harris* 480.

The opinion of the Court was delivered by

BLACK, J.—If the law would not take a simpler view of human affairs than the parties and counsel seem to have taken of this case, the administration of justice would soon become an impracticable thing.

About the beginning of the present century a dispute arose concerning a tract of land, between one Sally Cook and Samuel Parker, each claiming to be entitled to it by a settlement right. The dispute grew into a quarrel, which ended in the forcible eviction of one party and a criminal prosecution against the other. Then they compromised, Sally Cook agreeing to take 50 acres, and relinquish all claim to the balance, while Parker was to get

title from the Commonwealth for the whole and make her a conveyance for the 50 acres. Sally Cook and those claiming under her have been in possession of the 50 acres ever since. The present plaintiffs claim under Sally Cook, and the defendants under Parker.

It is not without some surprise that we find these parties going back to the remote transactions of a former generation, and fishing up matter for a lawsuit from the oblivion of nearly fifty years. It is still stranger to see this done in the form of an ejectment for the whole of the original tract of land, when the plaintiffs are themselves in the actual possession of a part of it, and as much in possession of all the rest as they have been at any time since 1806.

It is now alleged that the compromise under which the parties have been holding ever since its date was procured by fraud, and this question of a fraud committed in 1806 was actually left to a jury in 1855. We know not how true or how false this allegation may be. It is wholly impossible for us to rely, with the least confidence, on the very small amount and imperfect character of the evidence which can now be given of it. Death has disarmed the accused parties of the power of self-defence, and closed the lips of the witnesses who might have testified in their favour. After such a lapse of time no owner of land can be called on to answer a charge impugning his title in that way. If he could, where would be the security of property? When a person, against whom a fraud has been perpetrated, lies by for twenty-one years without causing it to be investigated, he will not then be permitted to show it. From so long an acquiescence, the presumption of law is conclusive that all was done rightly. For this reason the judge erred when he instructed the jury that they might find for the plaintiffs on that ground.

It seems that one of the defendants, in 1836, got the whole tract patented to himself, including the 50 acres in possession of the plaintiff. This gave him the legal title in trust (to the extent of the 50 acres) for the plaintiffs. But the Court charged that it was an ouster of the plaintiffs, and entitled them to recover in ejectment, although they were not out of the actual possession. The law is otherwise. Ejectment is a possessory action. It is designed to redress no other wrong than that of holding the true owner out of possession, and it cannot be maintained for land of which the plaintiff is himself in possession.

We have already said enough to lay the question of fraud out of the case, and to show that the recovery of the one-sixth on that ground was all wrong. On all the other evidence the Court below and the jury came rightly enough to the conclusion that the plaintiffs had no title to more than the 50 acres. Yet a conditional verdict was given for the whole. We say that they could not

[Kribbs *v.* Downing.]

recover any part of the tract—not the 50 acres, because that they had already—and not the balance, because to it they had no right.

If I am in possession of a piece of land, which I hold by an equitable title, and my trustee is in possession of another piece, to which he has a title legal and equitable both, I cannot demand his land from him as a penalty for not making a legal conveyance of mine.

How the conveyance of the legal title may be enforced is a question which does not arise now, and perhaps never will; for the long possession of the plaintiffs makes them amply secure in the enjoyment of the 50 acres against any claim that can possibly be made.

This curious case has twenty-three errors assigned; but they do not require any further notice than what they have received.

Judgment reversed and *venire facias de novo* awarded.