633 A.2d 1204

**Estate of Bertha KLETT, Wayne Rodgers, Executor and/or Wayne Rodgers, Individually, Appellant,**

**v.**

**Carol EBOCH, Her Heirs and Assigns and Other Unnamed Parties, Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 14, 1993.

Filed Nov. 8, 1993.

Robert B. Manchester, Bellefonte, for appellant.

Alan Kirk, Clearfield, for appellees.

Before KELLY, POPOVICH and BROSKY, JJ.

POPOVICH, Judge:

We are asked to review an order of the Court of Common Pleas of Clearfield County entering judgment in favor of the defendant, Carol Diane (Klett) Eboch, quieting title to a parcel of real estate against the plaintiffs/appellants, Estate of Bertha Klett, Wayne Rodgers, Executor and/or Wayne Rodgers, individually. We affirm.

This dispute was presented to the court below on a "case stated" basis, with the facts relevant to resolution of the matter agreed to by both sides. In 1945, a 5–year–old, Carol Diane (Klett) Eboch, was conveyed property by a benefactor, the reason for which was unknown. The deed was properly recorded. On May 1, 1951, the same property was transferred to Carol's sister Donna Mae (Klett) Botwright, and recorded, but to which, according to the sworn affidavit of Donna, Carol never affixed her signature. The identity of the person who did execute the deed on behalf of Carol was not disclosed.

Thereafter, by deed recorded 1958, Donna conveyed the subject property to her and Carol's mother, Bertha Walton Klett. During Bertha's lifetime, she made declarations that the property at issue belonged to her. Upon Bertha's death in December of 1990, her will was probated and devised the subject property to her grandson/executor, Wayne Rodgers. With the grant of letters of administration to Wayne, a Complaint By Devisee To Quiet Title was filed and alleged that the decedent occupied the property and held it out as her own for approximately 36 years, including approximately 21 years during which Carol was in her majority. Therefore, the executor argued, "even if there was a gift of property in question to the Defendant which was not negated by the later transfers to Donna Mae Klett and from thence to Bertha ... it still effectively reverted to ... Bertha ... by the principle of adverse possession." Paragraphs 10 & 11.

All parties admitted that, save for the "hostility" criterion, all other elements of adverse possession had been established. Nonetheless, Carol denied having any knowledge of her ownership of the property until after her mother's (Bertha's) death, some 40 years after the 1951 transfer to Donna.

By opinion and order dated March 10, 1993, the court found that the "hostile" element necessary to prove adverse possession was missing from the equation since Carol was "unaware" that her ownership interest in the property was at risk. Without any knowledge that her mother's ownership interest to the premises was in doubt, the court felt that: "To divest

Defendant of her rightfully owned property would ... cause a grave injustice." This appeal followed.

Initially, the plaintiffs/appellants contend that with the parties' stipulation that all items of adverse possession were met, except for the element of hostility, the law permits the absent element of "hostility" to be implied. See *Tioga Coal Co. v. Supermarkets General Corp.*, 519 Pa. 66, 546 A.2d 1, 3 (1988), wherein the Supreme Court refined the adverse possession rule to allow for the "implying" of hostility, regardless of the subjective state of mind of the trespasser, where all other elements of adverse possession have been established.

However, as true as the allowance of the *Tioga* Court to imply hostility in an adverse possession case is, we must not lose sight of the fact that the Court also wrote that the conduct of the interloper must be that which places the "record owner" on "notice" that his or her title to land is being undermined by actual, continuous, exclusive, visible, notorious and distinct possession by another; to-wit:

According to the dominant view among commentators on the law of real property, the requirements for acquiring title by adverse possession come down to a simple test. Has the adverse possessor so acted on the land in question as to give the *record owner* a cause of action in ejectment against him for the period defined by the statute of limitations? It matters not what the motives or the state of mind of the possessor are. What matters is the possessor's physical relationship to the land over a sufficient length of time. Of course, if the possessor has the *record owner's* permission, that changes the picture.

The possession is then no longer hostile in a legal sense, and no right to title will accrue to the possessor. But this, the argument runs, is precisely because the *record owner* has no cause of action against one whom he has permitted to occupy the land. The special situation shows the correctness of the underlying test.

The attractions of this view of adverse possession are great. It is securely tied to the statute of limitations, the

foundation of the doctrine, which defines the period after which the *record owner* will lose his cause of action to recover the land from the trespasser. This view provides a workable test. By excluding inquiry into the possessor's state of mind, it confines attention to external and verifiable facts. It may even promote the settling of land titles and the alienability of the land by more easily resolving disputes over titles.

Helmholz, "Adverse Possession and Subjective Intent," 61 Wash.Univ.Law Quart. 331 (1983).

\*　　\*　　\*　　\*　　\*　　\*

... most jurisdictions 'deem the animus of the possessor irrelevant. Rather, they look to the actual physical facts of the possession to determine if such circumstances of notoriety exist *so that the true owner is put on notice.* ...'

\*　　\*　　\*　　\*　　\*　　\*

Pennsylvania follows the majority view. *See, e.g., Dimura v. Williams*, 446 Pa. 316, 286 A.2d 370 (1972)....

519 Pa. at 71–73, 546 A.2d at 3 & 4 (Emphasis added). See also Concurring Opinion by Justice Larsen, who added that "where possession is sufficiently open and notorious *to put the true owner on notice* of an adverse claim, that possession is hostile." *Id.* at 76, 546 A.2d at 5 (Emphasis added). Accord *Sutton v. Miller*, 405 Pa.Super. 213, 592 A.2d 83, 90–91 (1991). Where the situation is otherwise, e.g., possession held *under* rather than *against* the record title owner it cannot ripen into title. See *Sutton*, supra, 405 Pa.Super. at 226, 592 A.2d at 90; 3 Am.Jur.2d, Adverse Possession § 9 (1986).

In the same vein, our Supreme Court held that the act of hostility necessary to render possession adverse must be "brought home" to the owner of the property as a condition precedent to its effectuation. See *Vlachos v. Witherow*, 383 Pa. 174, 118 A.2d 174 (1955), a case in which one Robert N. Donaldson by deed of 1927 conveyed a tract of land to his daughter, Clara B. McClure, a portion of which he continued to use as his homestead until his death in 1931. It was admitted that Robert N. Donaldson was not aware that the

portion of the tract used by him had been transferred to his daughter. Also, it was not contested that the segment of realty on which his homestead rested, which sat adjacent to the lot given to Clara, was devised to his son Walter for the duration of Walter's life, with remainder to his children/the defendants.

Walter continued to occupy the portion conveyed to him from the date of his father's death in 1931 until his own demise in 1950. His children continued to do the same until the date of trial. After Clara died in 1936, her heirs conveyed the property conveyed by her father to the plaintiffs. The plaintiffs brought an action in ejectment and the trial court directed a verdict in their favor. On appeal, our Supreme Court affirmed. In doing so, it wrote, in relevant part, that:

Where, as here, the parties holding legal title were unaware of the ownership and the parties in actual possession were likewise in ignorance of the record legal ownership, *how can it be argued that there was any element of hostile possession until all the parties apparently become aware of such legal ownership of the disputed land....*

*While the word "hostile" has been held not to mean ill will or hostility, it does imply the intent to hold title against the record title holder.* Clara B. McClure was the record title holder after the conveyance to her of the disputed land by her father in 1927. The entire case of the defendants is to the effect that she never knew that this portion of the lot had been conveyed to her. This brings the case clearly within the principle laid down in *Milnes v. Van Giler*, 197 Pa. 347, 47 A. 197, which holds that the grantee must have notice of the hostile intent of the grantor or those claiming through the grantor, in this case being the predecessors in title of the defendants, to wit, Robert N. Donaldson, and Walter E. Donaldson.

＊　　＊　　＊　　＊　　＊　　＊

This principle that notice of the hostile intent must be brought home to the grantees, is particularly applicable where the vendor continues in possession after the convey-

ance of the land to the grantee. It has long been the law in Pennsylvania that as between a grantor and a grantee in a deed, the continued possession of the grantor after the date of the delivery of the deed can never give rise to title by adverse possession unless and until the privity between the vendor and vendee is severed by some unequivocal act. *Olwine v. Holman,* 23 Pa. 279.

To create any possible title by adverse possession it has been held that the grantor must manifest his intention to hold adverse to the grantee by some act of hostility to the title of his vendee. *Ingles v. Ingles,* 150 Pa. 397, 24 A. 677, 678.

This act of hostility to the title of the vendee, to make the continuous possession of the vendor adverse and hostile, must be brought to the knowledge of the owner of the property. *Caldwalader v. App.,* 81 Pa. 194, 211.

The possession of the vendor, Robert N. Donaldson, is considered the possession of the vendee, Clara B. McClure, until such hostile act takes place. Since there was no evidence in this case of any such hostile act on the part of Robert N. Donaldson or of Walter E. Donaldson, adverse possession in this case never began to run during the lifetime of either of these parties.

\* \* \* \* \* \*

[*Ingles v. Ingles,* supra] ... reaffirmed the position that the possession of the vendor is the possession of the vendee and "until some unequivocal act is done by the vendor, the knowledge of which is brought home to the vendee, tending to show that the former holds adversely, no question of the statute of limitations can arise."

A similar situation existed in the case of *Owens v. Peters,* 126 Pa.Super. 501, 191 A. 399. \* \* \* [T]he Court applied the doctrine that possession of the grantor in the deed was the possession of the grantee and that there was not sufficient evidence manifested to the grantee of any act of hostility tending to show that the grantor was holding adverse or hostile to the title of the grantee. \* \* \* The

Court pointed out that the defendants had failed to meet the burden to prove adverse possession.

383 Pa. 174, 118 A.2d at 177, 178 (Emphasis added).

■  Viewing the remarks of *Tioga* and *Vlachos* in tandem, we garner the following precepts therefrom: In order for the element of "hostility" to be satisfied (by either actual proof or implicitly allowing for its satisfaction where all other elements of adverse possession have been met), the party claiming the benefits of adverse possession must show that his/her/its conduct was directed against the "record title owner" such that the "record title owner" would be placed on notice ("aware") that a challenge ("disseised") of legal title is being asserted, awareness of which would be recognized by a reasonable person in like circumstances. *Id.* Absent the elements of "record title" and "awareness" assignable to the true owner, the conduct of the interloper will not be considered sufficient to trigger the running of the statute of limitations for adverse possession purposes.

■  Instantly, as mentioned in *Tioga*, Carol (initial grantee and subsequent grantor to her sister Donna) was *not* the "record title holder" at the time that her sister (grantee/grantor) and mother (grantee) occupied the property for adverse possession purposes. Further, and most importantly, neither her sister nor mother "brought home" to Carol that her interest in the homestead (conveyed without authorization and never confirmed thereafter by acquiescence in the absence of knowledge of one-time ownership) was in jeopardy.

Carol never knew that she had an interest (inchoate or otherwise [1]) in the homestead until *after* her mother's death.

1.  We would note that when title to the property at issue was transferred to Carol, at the age of 6, the law allowed her to retain ownership of the realty. See Appellee's Brief at 17, wherein it is written:

In general, minors may acquire and hold real or personal property. *Mobely v. Oeker*, 3 Yeates 200 (1801). With respect to the twenty-one (21) year adverse possession statute, minors are given ten (10) years after removal of the disability within which to assert their rights. 42 Pa.C.S.A. § 5501, § 5530 [& § 5533].

A deed of a minor is generally binding upon her, i.e., it remains subject to her ratification or avoidance until after she becomes of age.

As such, consistent with rationale of *Vlachos*, supra, and the cases cited therein, the possession of the vendees (Carol's sister and mother) is considered the possession of the vendor, Carol. Therefore, the 21–year period needed to elapse to activate the doctrine of adverse possession was not met. The absence of "notice" on the part of Carol (one-time grantor/vendor) as to her interest in the property in dispute undermines the application of adverse possession as a vehicle for the appellants to secure *legal* title to the property. No conduct was manifested by her sister or mother to make Carol aware of her interest to cause her to inquire preceding her mother's death.

The appellants point to *Kribbs v. Downing*, 25 Pa. 399 (1855), to bolster their argument seeking ownership of the decedent's property. In *Kribbs*, one Cook and Parker claimed entitlement to the same tract of land, out of which grew a forcible eviction of one and a criminal prosecution of the other. These complaints resulted in a compromise in which Cook was to receive 50 acres, while Parker was to receive title for the whole and make Cook a conveyance for the 50 acres. Cook and those plaintiffs claiming under her remained in possession of the 50 acres up to the date of trial. Possession by Cook and the plaintiffs spanned nearly fifty years from the date of claimed acquisition (1806) and trial (1855).

It was alleged that the agreement between the parties had been procured by fraud in 1805, a question left to the jury to

The deed is not held to be void, but merely voidable. *Logan v. Beaty*, 21 A. 1083, 142 Pa. 442, [sic] (1891). The appellee was conveyed the subject property in 1945 when she was approximately five (5) years old. Subsequently, without her knowledge, consent or approval and without counsel or guardian, by Deed dated May 1, 1951, and not executed by the appellee, the property was conveyed by her to her sister, Donna Mae Klett (Botwright) at a time when the appellee was approximately eleven and one-half (11½) years. A subsequent record affidavit by Donna Mae Klett Botwright now confirms that Carol Diane Klett Eboch, the appellee, did not execute the Deed in question and was not present at the time.

Without the appointment of a guardian to handle the affairs of Carol during her minority, as to the realty in question, it appears highly suspect that the conveyance from Carol (then age 11) to her sister Donna would be considered proper. See 20 Pa.C.S.A. § 5101 *et seq.* of the Decedents, Estates and Fiduciaries Code.

decide in the 1855 trial. The Court acknowledged that the passage of time and the death of the parties privy to the agreement "disarmed the accused parties of the power of self-defense, and cloud the lips of the witnesses who might have testified in their favour." 25 Pa. at 404. This lapse in time, observed the Court, impaired the ability of the true owner of the property from rebutting a claim impugning title to the property. If such were permitted, the security of property would be jeopardized. This statement was followed by language which has been seized by the appellants to buttress their contention that, even assuming the perpetration of a fraud upon the appellee/Carol during her youth, her inactivity until after her mother's death should be viewed as acquiescence to the validity of the disputed transfer; to-wit:

> When a person, against whom a fraud has been perpetrated, lies by for twenty-one years without causing it to be investigated, he will not then be permitted to show it. From so long an acquiescence, the presumption of law is conclusive that all was done rightly.

*Id.* Interestingly, the Court went on to discount the fraud argument (brought by the plaintiffs as successors to Cook's title to the 50 acres in dispute) as an improper ground for recovery. Instead, the Court held that the lower court's directing a verdict for the plaintiffs was correct, but on the basis that "the long possession of the plaintiffs makes them amply secure in the enjoyment of the 50 acres against any claim that can possibly be made." *Id.* at 405. Thus, adverse possession would appear to be the predicate for the Court's remark on the question of ownership properly lying with the plaintiffs.

At bar, unlike in *Kribbs*, we do not have a scenario in which the grantor and grantee had compromised on the transfer issue. For example, reliance had been placed by Cook (the plaintiffs' predecessor in title and grantee) on the compliance of Downey (the defendant's predecessor in title and the grantor) in doing what he had agreed to do. As a result, the complaining party in *Kribbs* could not be said to be "unaware" of her interest in the disputed property; such is not the case

*sub judice.* As such, we do not find *Kribbs* to be instructive in the resolution of our case.

We look, instead, to the logic and precepts referred to in *Tioga* and *Vlachos* to hold that the absence of conduct attributable to Carol's sister or mother to place her on "notice" that an interest in the homestead was being assailed renders inapplicable the doctrine of adverse possession, i.e., "hostility" element was neither proven nor may we "imply" its satisfaction by law *under the unique facts of this case.* Accordingly, finding no merit to the challenge of the order appealed and the presence of no abuse of discretion assignable to the court below, we affirm.[2]

Order affirmed.

---

**2.** With the disposition of the adverse possession argument in favor of the appellee/Carol, we see no need to address the remaining two issues raised by the appellants, each being intertwined in the issue responded to on appeal.