Doris STANSBURY, surviving spouse of Donald L. Stansbury, deceased, Appellant (Defendant),

v.

Howard F. HEIDUCK, Appellee (Plaintiff).

No. 97–327.

Supreme Court of Wyoming.

July 20, 1998.

Timothy C. Kingston of Graves, Miller & Kingston, P.C., Cheyenne, for Appellant.

Stanley K. Hathaway of Hathaway, Speight & Kunz, LLC, Cheyenne, for Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR*, JJ.

* Chief Justice at time of expedited conference

MACY, Justice.

Appellant Doris Stansbury (Doris) appeals from the district court's judgment which quieted the title to certain Laramie County property in favor of Appellee Howard Heiduck (Howard).

We affirm.

## ISSUES

Doris presents the following issues for our review:

A. Did Heiduck establish that his use of the subject property was adverse to that of the real owner?

B. If Doris Stansbury did not know that she had an interest in the subject property, could Heiduck's use of the property be hostile to her interest?

## FACTS

On August 8, 1977, Donald Stansbury (Donald) executed a warranty deed, conveying certain property located in Laramie County to Howard and his wife, Lillian Heiduck (Lillian). Lillian and Howard were Donald's daughter and son-in-law. Although Donald and the Heiducks believed that the deed conveyed 180 acres, it actually described only ninety acres. Donald subsequently married Doris.

On September 12, 1978, Donald filed an action in the district court against the Heiducks. He alleged that the Heiducks had used fraud and undue influence to procure the deed to the property. The district court held a jury trial, and the jury returned a special verdict, finding that the Heiducks had not engaged in fraud or undue influence in obtaining the transfer of the property.

Lillian died on April 15, 1981. Shortly thereafter, on June 3, 1981, Donald died. Howard paid the real property taxes on the entire 180-acre tract every year from 1978 until 1997. In 1982, Howard discovered that the deed from Donald described only ninety acres. He continued, however, to use and to pay taxes on the entire property. He did not inform Doris that the deed conveyed only ninety acres.

On February 12, 1997, Howard filed a quiet title action in the district court. He claimed that he had acquired the title, by adverse possession, to the ninety acres which were not included in the deed. He published notice of the quiet title action, and Doris answered the complaint, disputing Howard's ownership claim. She also filed a counterclaim in which she asserted that she was the rightful owner of the property.

The district court held a bench trial on July 30, 1997. At the conclusion of the trial, the trial court entered a judgment, quieting the title to the property in favor of Howard. Doris appealed from that judgment.

## DISCUSSION

The trial court made specific findings of fact and conclusions of law. We, therefore, apply our traditional standard for reviewing a trial court's findings and conclusions. *Resource Technology Corporation v. Fisher Scientific Company,* 924 P.2d 972, 974–75 (Wyo.1996). This Court will not set aside a district court's findings of fact unless the findings are clearly erroneous. *McNeiley v. Ayres Jewelry Co.,* 886 P.2d 595, 597 (Wyo.1994). " 'A finding is "clearly erroneous" when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Hopper v. All Pet Animal Clinic, Inc.,* 861 P.2d 531, 538 (Wyo.1993) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). Stated alternatively: "[A] determination that a finding is against the great weight of the evidence means a finding will be set aside even if supported by substantial evidence." *Id.* "The review standard recognizes that deference must be given to the opportunity of the trial court to judge the credibility of the witnesses, and that a reviewing court will not set aside the court's findings merely because it might have reached a different result." *Doenz v. Garber,* 665 P.2d 932, 937 (Wyo.1983). We review a district court's conclusions of law *de novo* on appeal. *McNeiley,* 886 P.2d at 597.

The trial court concluded that Howard had acquired the property by adverse possession.

Doris argues that Howard's use of the property was not hostile to the true owner. Howard maintains that the trial court properly determined that his use of the property was adverse.

■ The elements of adverse possession are "actual, open, notorious, exclusive and continuous possession of another's real property for the statutory period, which possession must be hostile, and under a claim of right or color of title." *Rutar Farms and Livestock, Inc. v. Fuss*, 651 P.2d 1129, 1132 (Wyo.1982). A person who is claiming the title to real property by adverse possession must notify the landowner of his hostile use so that the landowner will know his title is at risk and the running of the ten-year statutory period has commenced. 651 P.2d at 1134. "It has been declared that the disseisor 'must unfurl his flag on the land, and keep it flying, so that the owner may see, if he will, that an enemy has invaded his domains, and planted the standard of conquest.'" *Marvel v. Barley Mill Road Homes*, 104 A.2d 908, 911 (Del.Ch.1954).[1]

The trial court made the following pertinent findings of fact:

2. On September 12, 1978, Donald L. Stansbury filed a Complaint in the District Court of Laramie County charging that Heiducks obtained his property by fraud and undue influence. He described his real property as consisting of approximately 180 acres.... The case was tried to a jury in a two-day trial beginning on August 20, 1979. The jury found for the Heiducks on all three counts of a Special Verdict. Judge Alan Johnson entered a Judgment for Defendants Heiduck on August 31, 1979....

3. Doris Stansbury attended all of the trial with her husband and was aware of the nature of the trial and the hostile relationship with the Heiducks.... Testimony at the trial dealt with all of the real property previously owned by Stansbury southwest of Cheyenne consisting of 180 acres. Neither [Heiduck's attorney] nor Heiduck [was] aware that the legal description in the Deed was incorrect, but Heiduck was aware that the property owned by Stansbury was approximately 180 acres.... Stansbury and his attorney met with Heiduck and his attorney and removed all of his personal property requested by Mrs. Stansbury, whereupon Stansbury vacated the premises and the hostile relationship with Heiducks continued....

4. After August 8, 1977, Heiducks did not operate and use the subject property with permission from Stansbury, but under color of right. Stansbury made no claim upon any of the property titled in his name in the Southwest Quarter of Section 12, Township 13 North of Range 61 West of the 6th P.M. in Laramie County, Wyoming, from the date of the Judgment against him in August of 1979 to the date of his death on June [3], 1981. Mr. Stansbury paid no taxes on the subject lands after August of 1977 to the date of his death in 1981. Heiduck occupied and used the subject property openly and continuously from August of 1977 to the present. He has pastured horses upon the property year round, and no one has claimed any interest in the property. Lillian Heiduck died before her father's death in 1981.... Mrs. Stansbury, who stopped using her husband's name after his death, made no claim to any of the subject property and did not probate any estate left by her husband....

    ....

7. Plaintiff Heiduck had no contact from or with Doris Stansbury since 1979 and had no reason to contact her. He continued to use and operate the subject property openly, exclusively, notoriously, and continuously under a claim of right and adversely to anyone claiming ownership thereof.... The hostility that existed at the time of the jury trial of complaints by Donald Stansbury against Heiducks remains the same.

---

**1.** Doris maintains that, under *Hillard v. Marshall*, 888 P.2d 1255, 1261 (Wyo.1995), "[t]here must be actual notice of the hostile claim or declarations of hostility so manifest and notorious that actual notice will be presumed." In *Hillard*, we discussed changing permissive use to adverse use; therefore, *Hillard* does not apply to the facts of this case.

We agree with the district court that the hostile nature of Howard's use of the property commenced with the 1979 fraud trial and continued until he filed his quiet title action. Both Donald and the Heiducks believed that the entire 180–acre tract was at issue in the fraud trial. The clear purpose of Donald's action was to take ownership of the property from the Heiducks. Howard's actual, open, notorious, and continuous use of the property subsequent to the fraud action was, therefore, adverse and hostile to Doris' ownership of the property. Howard unfurled his flag on the property, and Doris could have, with a little investigation, seen that the property had been invaded.

Doris argues that Howard's use of the property could not have been hostile to her ownership of the property because, until he filed his quiet title action, she was not aware that she had an interest in the property. She cites *Klett v. Eboch*, 430 Pa.Super. 193, 633 A.2d 1204 (1993), *appeal denied*, 537 Pa. 662, 644 A.2d 1200 (1994), to support her argument. In that case, property was conveyed to Eboch when she was five years old. 633 A.2d at 1205. Six years later, the same property was transferred to Eboch's sister, but the transfer document did not contain Eboch's signature. *Id.* The sister thereafter conveyed the property to the girls' mother, who claimed ownership of the property for the remainder of her life. *Id.* Upon the mother's death, her grandson received the property through her will. *Id.* The grandson brought a quiet title action, claiming that the mother had acquired the title to the property by adverse possession. *Id.*

The Pennsylvania Superior Court affirmed the judgment which was entered in favor of Eboch because the mother did not acquire the title to the property by adverse possession. *Id.* The court ruled that Eboch was not technically the record title holder while the mother occupied the property. 633 A.2d at 1208. The court also concluded that the mother and the sister did not place Eboch on notice that her interest was in jeopardy. *Id.*

The case at bar is entirely different from *Klett*. During the period that the Heiducks occupied the property, Donald was the record owner of the ninety acres which were not included in the deed. Doris was aware that Donald was the owner of the property, at least prior to the 1977 conveyance, and a careful examination of the deed would have revealed that only ninety acres were included in its description.

A case which is more analogous to the case at bar is *Kranenberg v. Meadowbrook Lodge, Inc.*, 623 P.2d 1196 (Wyo.1981). In that case, Kranenberg purchased property which had a cabin located on it. 623 P.2d at 1197. The vendor informed Kranenberg that the property line ran through a corner of the cabin, but the vendor assured Kranenberg that he would take care of the problem. *Id.* Kranenberg's neighbor also told him that "everything was fine, that he, Mr. Kranenberg, need not worry about it." 623 P.2d at 1198. The land description was not, however, corrected of record. *Id.* For eighteen years, Kranenberg continued to use the cabin and a yard area which technically belonged to the neighbor. *Id.*

In evaluating Kranenberg's claim that he had obtained the title to the property by adverse possession, this Court stated: "The evidence is clear that during these years the Kranenbergs as well as their neighbors regarded the disputed property between the log house and the fence, as Kranenberg property." *Id.* We held that Kranenberg's possession of the disputed property was adverse and that he had acquired the title to the property. 623 P.2d at 1199–1200.

Like Kranenberg and his neighbor, both the Heiducks and the Stansburys regarded the disputed ninety acres as belonging to the Heiducks. Howard occupied the property for the statutory period, and his possession was adverse to Doris' ownership of the property. The trial court's finding that Howard's use of the property was hostile was not clearly erroneous. The trial court, therefore, correctly quieted the title to the property in Howard's name.

Affirmed.