J-S72035-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RONALD J. STEWART AND BONNITA STEWART, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| T.W. PHILLIPS GAS SUPPLY CORP., | : | |
| | : | |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| WAYNE B. HESS, KATHLEEN R.H. MARSH, CYNTHIA A.H. GIARDINA, WILLIAM BLAIN HESS, GAIL HESS CRIGGER, CAROL HESS BRACKEN, PHYLLIS J. SMITTLE, CONNIE ROWE, WILLIAM RICE, DANIEL RICE, GREGORY RICE, TIMOTHY RICE, TERI BOSTON, DONITA KLEIN, | : | |
| | : | |
| Appellees | : | No. 791 WDA 2014 |

Appeal from the Judgment Entered May 8, 2014,
in the Court of Common Pleas of Indiana County,
Civil Division at No(s): 10338 C.D. 2009

BEFORE:  BENDER, P.J.E., SHOGAN and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:        **FILED JANUARY 12, 2015**

Ronald and Bonnita Stewart (Appellants) appeal from a judgment entered in favor of T.W. Phillips Gas Supply Corporation (T.W. Phillips) and members of the Hess family (Additional Defendants).  In so doing, Appellants challenge the trial court's conclusion, made at the summary judgment stage of the litigation, that Appellants are not the record owners of

_____

* Retired Senior Judge assigned to the Superior Court.

the oil and gas rights associated with a property located in Indiana County, Pennsylvania. They also challenge the trial court's conclusion, which followed a non-jury trial, that Appellants do not own those rights through adverse possession. We affirm.

As best we can discern from the record and the parties' briefs, the background underlying this matter can be summarized as follows. In 1947, the Stewart family purchased from Eastern Coal Corporation property in Indiana County through a sheriff's sale. A portion of this property, 60 acres, was subject to an oil and gas lease entered into by Eastern Coal Corporation, as lessor, and T.W. Phillips, as lessee.

By purchasing the property, the Stewart family became lessors of the oil and gas rights. That lease permitted T.W. Phillips to extract oil and gas from the land. In exchange for this permission, T.W. Phillips provided royalties to the Stewart family and free gas to a home they own. The home is not located on the land in question.

In 1948, the Stewart family sold the 60-acre portion of land to the Cicero family. The Stewarts, however, specifically excepted and reserved the oil and gas rights underlying those 60 acres.[1]

---

[1] "Pennsylvania law recognizes three discrete estates in land: the surface estate, the mineral estate, and the right to subjacent (surface) support. Because these estates are severable, different owners may hold title to separate and distinct estates in the same land." **Consolidation Coal Co. v. White**, 875 A.2d 318, 326 (Pa. Super. 2005) (citations omitted).

In 1949, the Stewart family transferred, by deed, to Mary P. Stewart[2] ownership of property,[3] including the oil and gas rights to the 60-acre Cicero property. In 1951, Mary P. Stewart transferred, by deed, ownership of property to the Hess family,[4] Additional Defendants' predecessors.

Until the early 2000s, T.W. Phillips continued to provide free gas to the Stewart family home. During that same time period, T.W. Phillips also paid royalties to Mary P. Stewart and, after her death, to the father of Appellant Ronald Stewart. The royalty payments stopped in 1995 because the Stewarts did not designate a payee after the death of Mr. Stewart's father. There also was a gap in payments between 1973 and 1980. Mary P. Stewart died in 1973, and Mr. Stewart's father did not direct T.W. Phillips to pay him until 1980.

> In 2009, [Appellants Ronald and Bonnita Stewart] filed the initial complaint in this case against [T.W. Phillips][5] … because, in 2002, [T.W. Phillips stopped furnishing Appellants] with gas and [] royalties from the oil and gas tract at issue in this matter. Additional Defendants were joined to this action in 2011 because of their claim of ownership of the tract. In 2005, T.W. Phillips entered into a Lease Modification Agreement with Additional Defendants, who were unaware of their ownership of the tract

---

[2] Mary P. Stewart is the paternal grandmother of Appellant Ronald Stewart.

[3] It appears that the Stewart family transferred to Mary P. Stewart all of the property they acquired in the 1947 sheriff's sale.

[4] The parameters of this property are at issue here and will be discussed herein.

[5] The named defendants in the original complaint were T.W. Phillips and PC Exploration Inc. PC Exploration Inc. apparently is no longer a party to this action.

until T.W. Phillips approached them. The agreement recognizes Additional Defendants as the lessors of the natural gas and provided Additional Defendants are to receive royalties from the gas produced from existing and future wells. Thereafter, Additional Defendants began receiving royalties from T.W. Phillips and continued receiving them until the commencement of this action.

… The parties dispute the effect of the 1951 deed. Additional Defendants assert that Mary P. Stewart conveyed ownership of the oil and gas tract to their predecessors, while [Appellants] assert that she continued to reserve and except the tract such that it was not conveyed. [In the alternative, Appellants contend that they obtained ownership of the oil and gas tract by adverse possession.]

Trial Court Opinion and Order, 8/23/2013, at 2-3.

On May 15, 2013, Additional Defendants filed a motion for summary judgment. They maintained that the record established as a matter of law that they were the record owners of the oil and gas rights and that Appellants did not obtain ownership of those rights through adverse possession.

The trial court issued an opinion and order on August 23, 2013. The court purported to deny Additional Defendants' motion for summary judgment. In so doing, the court first concluded that the 1951 deed unambiguously conveyed the oil and gas rights to the Hess family, Additional Defendants' predecessors, thus making Additional Defendants the record owners of those rights. The court, however, went on to conclude that Appellants' claim of ownership by adverse possession survived summary

judgment. Thus, in effect, the court denied in part and granted in part the motion for summary judgment.

A non-jury trial occurred on November 25, 2013. The only issue litigated at the trial was Appellants' adverse-possession claim. Appellant presented one witness, Appellant Ronald Stewart, and Additional Defendants presented testimony from Frank Koch. From 1974 to July of 2011, Mr. Koch worked for T.W. Phillips in its "land department." N.T., 11/25/2013, at 33.

On February 27, 2014, the trial court denied Appellants' adverse-possession claim; thus, the court, in effect, entered a verdict against Appellants and in favor of T.W. Phillips and Additional Defendants. Appellants timely filed a motion for post-trial relief. The trial court denied the motion, and on May 8, 2013, judgment was entered. Appellants timely filed a notice of appeal. The trial court directed Appellants to comply with Pa.R.A.P. 1925(b), and Appellants subsequently filed a 1925(b) statement. The trial court later issued a Pa.R.A.P. 1925(a) opinion wherein it adopted the previous opinions it had authored in this case.

In their brief to this Court, Appellants ask us to consider the following questions.

> [1.] Did the [t]rial [c]ourt commit an error of law when applying the facts produced for summary judgment when it determined that the Additional Defendants were the record owners of the natural gas rights?
>
> [2.] Did the [t]rial [c]ourt commit an error of law in the application of the facts produced at trial in determining that

[Appellants] had not proven adverse possession of the natural gas rights?

Appellants' Brief at 5 (reordered for ease of discussion; trial court's answers omitted).

We first address Appellants' contention that the trial court erred at the summary judgment phase by concluding that Additional Defendants are the record owners of the oil and gas tract. Appellants' Brief at 17-20.

> The standards which govern summary judgment are well settled. When a party seeks summary judgment, a court shall enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery. A motion for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law. In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Finally, the court may grant summary judgment only when the right to such a judgment is clear and free from doubt. An appellate court may reverse the granting of a motion for summary judgment if there has been an error of law or an abuse of discretion.…

*Swords v. Harleysville Ins. Companies*, 883 A.2d 562, 566-67 (Pa. 2005) (citations omitted).

Appellants argue that the trial court erred in its interpretation of the 1951 deed. According to Appellants, the proper interpretation of the 1951 deed is that it excepted and reserved the 60-acre Cicero family property, which necessarily means that the deed excepted and reserved the oil and gas rights associated with that property. Such an interpretation would mean

- 6 -

that Mary P. Stewart retained ownership of the oil and gas rights associated with the Cicero family property and that, through inheritance, Appellants now own those rights.

Whether the trial court properly interpreted the 1951 deed presents this Court with a question of law. "In reviewing questions of law, our standard of review is *de novo* and our scope of review, to the extent necessary to resolve this legal question, is plenary." ***Egan v. USI Mid-Atlantic, Inc.***, 92 A.3d 1, 10 (Pa. Super. 2014).

> When construing a deed, a court's primary object must be to ascertain and effectuate what the parties themselves intended. The traditional rules of construction to determine that intention involve the following principles. First, the nature and quantity of the interest conveyed must be ascertained from the deed itself and cannot be orally shown in the absence of fraud, accident or mistake. We seek to ascertain not what the parties may have intended by the language but what is the meaning of the words they used. Effect must be given to all the language of the instrument, and no part shall be rejected if it can be given a meaning. If a doubt arises concerning the interpretation of the instrument, it will be resolved against the party who prepared it. … To ascertain the intention of the parties, the language of a deed should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed.

***Consolidation Coal Co. v. White***, 875 A.2d 318, 326-27 (Pa. Super. 2005) (citations omitted).

The 1951 deed begins by granting to the Hess family coal rights attached to several pieces of property. Next, the deed grants to the Hess family "land," stating, "ALSO ALL those certain pieces, parcels or tracts of land situate in the Township, County and State aforementioned, bounded

and described as follows ….'"  Appendix to Appellants' Response to the Motion for Summary Judgment, 7/11/2013, at 4.  The deed then describes the land.

After providing the description of the land, the deed excepts and reserves "surface tracts of lands" of three areas unimportant to this appeal. *Id.* at 5.  The deed then excepts and reserves "certain tract[s] of land." *Id.* Critical to this appeal, the deed states, as the ninth conveyance,

> ALSO EXCEPTING AND RESERVING from the operation of this conveyance a certain tract of land containing 60 acres which was sold and conveyed by Mary P. Stewart, widow, et al, to Charles C. Cicero by deed dated June 8, 1948; and of record in Indiana Deed Book Vol. 376, page 352.

*Id.*

The trial court interpreted this language as follows.

> In this matter, the [c]ourt finds that the language to the deed is unambiguous.  The word "all" in the 1951 deed indicates that every tract of land in the ninth conveyance was to be conveyed to Additional Defendants' predecessors.  The exception and reservation of the Cicero property is limited to that which was conveyed to the Ciceros, which specifically did not include the oil and gas tract per the 1948 deed.  The oil and gas tract is not specifically excepted and reserved in the conveyance, and therefore[,] it is encompassed by the word "all."  This is the plain meaning of the word and is controlling.  Further, when the oil and gas tract was excepted and reserved in the 1948 deed, it severed that estate from the surface and other rights.  Thus, the oil and gas tract in the present matter was no longer part of the 60-acre Cicero parcel and would have needed to be individually excepted and reserved from the property conveyed in the 1951 deed in order for Mary P. Stewart to retain ownership.  For these reasons, Additional Defendants are the record owners.

Trial Court Opinion and Order, 8/23/2013, at 4-5 (citation omitted).

We agree that giving the words of the deed their plain meaning, and giving effect to all of the words used, the 1951 deed conveyed the oil and gas rights to the Hess family. By excepting only the portion of the 60 acres which Mary P. Stewart sold to the Ciceros, the deed did not except from the conveyance the oil and gas rights to those 60 acres which Mary P. Stewart did not sell to the Ciceros. Accordingly, Appellants' first issue warrants no relief.

We now turn our attention to Appellants' contention that, following the non-jury trial, the trial court erred by concluding that they do not own the oil and gas rights by adverse possession. Appellants' Brief at 13-16. We review such matters as follows.

> Our appellate role in cases arising from nonjury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue ... concerns a question of law, our scope of review is plenary.
>
> The trial court's conclusions of law on appeal originating from a non-jury trial "are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts" of the case.

*Allegheny Energy Supply Co., LLC v. Wolf Run Min. Co.*, 53 A.3d 53, 60-61 (Pa. Super. 2012) (citation omitted).

We further observe the following principles of law.

Adverse possession is an extraordinary doctrine which permits one to achieve ownership of another's property by operation of law. Accordingly, the grant of this extraordinary privilege should be based upon clear evidence. One who claims title by adverse possession must prove actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years. Each of these elements must exist; otherwise, the possession will not confer title.

*Pennsylvania Services Corp. v. Texas Eastern Transmission, LP*, 98 A.3d 624, 634 (Pa. Super. 2014) (citations and quotation marks omitted).

Here, the trial court first determined that Appellants failed to prove that they or their predecessors actually possessed the gas and oil rights. In this regard, the court highlighted that the original well to the gas was drilled in 1937, before the Stewart family owned the property. The court observed that no drilling for the oil and gas occurred during the Stewarts' ownership of the property and that "[n]o other physical entry onto the land for the purpose of natural gas production was made until 2006, after T.W. Phillips drilled another well and began paying royalties to [Additional Defendants]." Trial Court Opinion and Order, 2/27/2014, at 3-4. The court stated that the Stewarts merely received free gas and royalties pursuant to a lease to which they were not an original party.

The court also determined that, even if it were to accept Appellants' argument that their receipt of free gas and royalties established actual possession of the oil and gas rights, Appellants failed to prove that they or their predecessors visibly possessed those rights. In reaching this conclusion, the court stated,

[T]here was nothing done on the Stewarts' part that would indicate to [Additional Defendants or their predecessors] that there was an intrusion onto their property. During any period of ownership by the Stewarts, there was no physical entry, no drilling, or any other activity that would have put [Additional Defendants or their predecessors] on notice of the Stewarts' use. [Additional Defendants or their predecessors] could not visibly discover acts by Stewarts, as their acts were limited to receiving royalty checks and free gas at a residence located a considerable distance from [Additional Defendant's] property. While the [Appellants] claim that receiving free gas and royalties put the world on notice of their possession, these would not be activities that [Additional Defendants or their predecessors] could readily ascertain. Even had [Additional Defendants or their predecessors] visited the property regularly nothing would indicate to them that the Stewarts were receiving these benefits at a property several miles away.

*Id.* at 4.

On appeal, Appellants suggest that, because the Cicero family owned the surface rights to the land in question and T.W. Phillips leased the oil and gas rights to the land, neither they nor their predecessors could enter the mineral estate or otherwise show possession of that estate through activity on the surface estate. Their argument can be summarized as follows.

In this case[, Appellants] proved at trial that they had actual and visible possession of the gas rights until 2002, despite the 1951 disputed deed. They testified that they alone received the free gas and gas royalties. They introduced into evidence letters going back as far as 1936 showing that they alone dealt with the gas company. So if anyone wanted to know who claimed to own the gas rights, they could look on the gas well, see the name of the gas company, and until 2002 the gas company would have told them [Appellants], or their predecessors in title.

Appellants' Brief at 15-16 (citation to reproduced record omitted).

In order for Appellants to establish that they own the oil and gas rights by adverse possession, they had to prove at trial that, after Mary P. Stewart transferred ownership of those rights to Additional Defendants' predecessors, Appellants and their predecessors directed conduct toward Additional Defendants and their predecessors such that Additional Defendants and their predecessors would be aware that a challenge to their legal title to the oil and gas rights was being asserted, "awareness of which would be recognized by a reasonable person in like circumstances." *Estate of Klett v. Eboch*, 633 A.2d 1204, 1208 (Pa. Super. 1993). We agree with the trial court's conclusion that the mere receipt of royalties and free gas at a home located several miles from the oil and gas tract was insufficient to alert Additional Defendants or their predecessors that a challenge had been asserted to their legal title to the oil and gas rights.

We further highlight that Appellants do not dispute that neither they nor their predecessors ever entered the oil and gas tract during the ownership of the oil and gas rights by Additional Defendants or their predecessors. Thus, neither Appellants nor their predecessors put Additional Defendants or their predecessors on notice of a claim of adverse ownership. *See Delaware & Hudson Canal Co. v. Hughes*, 38 A. 568, 570 (Pa. 1897) ("Knowing all the facts, he was bound, if he desired to acquire title to his employer's mine, or any part of it, to enter upon the mineral estate at some

point, take possession, hold it openly and adversely for 21 years, so that his position and claim could have been known to the owner.").

To the extent that Appellants rely on T.W. Phillips' extraction of gas from the disputed tract to establish their claim of adverse possession,[6] Appellants have failed to point to any evidence of record which demonstrates that T.W. Phillips' activities were of a nature to put Additional Defendants and their predecessors on notice of a claim adverse to their ownership of the oil and gas rights. For instance, as we noted above, Appellants assert, "So if anyone wanted to know who claimed to own the gas rights, they could look on the gas well, see the name of the gas company, and until 2002 the gas company would have told them [Appellants], or their predecessors in title." Appellants' Brief at 16. Appellants fail to provide a citation to where in the record they established these facts, in violation of Pa.R.A.P. 2119(b) and (c). Moreover, when we reviewed the record, we did not discover any evidence that would establish such facts. Indeed, while it is undisputed that T.W. Phillips produced gas from a single well from the disputed oil and gas tract during the time in question, we found no description of the well in the record or any evidence that would suggest that, if a reasonable person observed

---

[6] Appellants fail to cite any legal authority to establish the proposition that a lessee's activities can be imputed to the lessor for purposes of an adverse possession analysis. However, because we conclude that Appellants have failed to support such a claim factually, we need not decide whether this proposition is legally sound.

the well, that person would know that the well was operating and producing gas.

Given these circumstances, we find no error in the trial court's conclusion that Appellants failed to prove that they adversely possess the oil and gas rights. For these reasons, we affirm the judgment.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/12/2015